630 So.2d 1206 (1994)
George D. MARTIN and Iris Martin, Appellants,
v.
EASTERN AIRLINES, INC., Appellee.
No. 92-3672.
District Court of Appeal of Florida, Fourth District.
January 19, 1994.
*1207 Michael A. Lewis of Law Offices of Gary, Williams, Parenti, Finney & Lewis, Stuart, for appellants.
Thomas E. Ice of Barwick, Dillian & Lambert, P.A., Miami Shores, for appellee.
POLEN, Judge.
In what appears to be a case of first impression in the Florida state appellate courts, we are asked to determine whether George and Iris Martin's claims for damages due to the alleged negligence of Eastern Airlines is preempted by the preemption provision of the Federal Aviation Act, Title 49 U.S.C.App. § 1305(a)(1). Not only do we hold that preemption is an affirmative defense which Eastern should have raised in the answer to the complaint, we also find on the merits that the appellants' negligence action is not preempted by Title 49 U.S.C.App. § 1305(a)(1). Accordingly, we reverse on both aspects of the appeal.
In August 1985, appellant, George Martin, was a passenger on Eastern Airlines when one of the flight attendants opened an overhead compartment during the flight, causing a briefcase to fall and strike him on the head. As a result, on September 30, 1987, George Martin filed a complaint for damages due to the alleged negligence of Eastern Airlines, which also included a claim for loss of consortium by his wife, Iris Martin. In March of 1989, Eastern filed for bankruptcy protection, and this case was stayed until January 31, 1991, when a stipulation and order modifying the automatic stay were filed. It was not until June 17, 1992, that Eastern filed a motion to dismiss the Martins' complaint based on federal preemption. Thus, the preemption issue was raised for the first time after the statute of limitations had run. On November 24, 1992, the trial court granted *1208 Eastern's motion to dismiss with prejudice on the federal preemption ground.
The Martins first contend that Eastern did not properly raise or preserve the preemption defense, in accordance with Florida Rule of Civil Procedure 1.110(d), which requires all matters constituting an avoidance or affirmative defense to be expressly set forth in the answer. We agree. See Temples v. Florida Industrial Construction Co., 310 So.2d 326, 327 (Fla. 2nd DCA 1975) (stating that an affirmative defense must be raised by pleading rather than by motion to dismiss); and Staples v. Battisti, 191 So.2d 583, 585 (Fla. 3rd DCA 1966), cert. denied 196 So.2d 926 (1967) (holding that it was reversible error to grant a motion to dismiss based on affirmative defenses that should be pled in the answer to the complaint, and may not be asserted as grounds for motion to dismiss even though availability may appear on the face of the complaint). Further, in In re Crash Disaster at Stapleton International Airport, 721 F. Supp. 1185 (D.Colo. 1988), the court recognized that preemption was an affirmative defense within the scope of Federal Rule of Civil Procedure 8(c), which is the federal counterpart of Florida Rule of Civil Procedure 1.110(d). The court thus held that Continental's attempt to raise a preemption defense in several negligence actions by way of a motion for summary judgment without having first raised it in the answer violated Rule 8(c). Similarly, Eastern's attempt to raise the preemption defense in the instant negligence action by way of a motion to dismiss, without having raised it in the answer, is violative of Florida Rule of Civil Procedure 1.110(d). See Heller v. Delta Airlines, Inc., No. CIV.A. 1937(RPP), 1993 WL 330093 (S.D.N.Y.) (August 25, 1993) (holding that because the defendant did not raise the preemption defense in its answer, it was not permissible by way of a motion to dismiss).
Eastern attempts to dissuade this court from holding that it waived the preemption defense. It points out that the court in Crash Disaster still addressed the preemption issue on the merits so as to avoid disposing of substantial legal questions on mere technicalities, while recognizing that the motion for summary judgment afforded the plaintiff sufficient notice of the defense to prepare substantial responses. However, we remain unpersuaded by this reasoning and do not retreat from the prevailing view that an affirmative defense must be raised in the responsive pleading before it may be considered in a motion to dismiss. Our reluctance to retreat is only fueled by the fact that Eastern did not file the motion to dismiss until June 17, 1992, almost five years after the Martins' complaint was filed, and almost a year and a half after the bankruptcy stay was lifted, clearly outside the statute of limitations.
We reverse on the merits as well and find that the Martins' complaint was not preempted by Title 49 U.S.C.App. § 1305(a)(1), entitled "Federal Preemption."
This code section provides in pertinent part:
[No] state ... shall enact or enforce any law, rule, regulation, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.
In Morales v. Trans World Airlines, 504 U.S. ___, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court interpreted section 1305(a) as preempting state enforcement actions "having a connection with or reference to airline `rates, routes, or services.'" However, the Morales Court did recognize that some actions were too "tenuous, remote, or peripheral" to have a preemptive effect. 504 U.S. at ___, 112 S.Ct. at 2040. In applying this test, the Supreme Court in Morales ultimately concluded that under section 1305(a), the states are preempted from attempting to regulate airline fares [i.e. rates] advertisements through general consumer protection laws. The court acknowledged that this determination did not require a consideration of where the line should be drawn in determining which state actions are preempted.
Since Morales, various United States district courts and circuit courts of appeal have addressed the issue of whether section 1305(a) preemption, as interpreted by Morales, is applicable to state tort claims. Although *1209 divergent holdings have been reached, we reject Eastern's argument that the holding in Morales should be extended to tort claims like the Martins' because the negligence of flight attendants touches on the regulation of services. Instead, we agree with the line of cases that have not extended the broad interpretation of section 1305(a) in Morales, to preempt common law negligence actions that are brought against the airlines. Most persuasive are the cases which are factually similar to the case at bar.
In Margolis v. United Airlines, Inc., 811 F. Supp. 318 (E.D.Mich. 1993), a luggage carrier fell from an overhead bin striking the plaintiff on the head. The Margolis court specifically concluded that in spite of the broad interpretation of section 1305(a)(1) in Morales, that "a state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services air carriers provide to customers in exchange for their fares." Id. at 321. The common law of negligence does not hold the airlines to a different standard of care than the Federal Aviation Act; and there is nothing in the statute itself or its history to suggest that the Airline Deregulation Act was intended to preclude common law negligence actions. Id. This is further evidenced by the fact that the majority of pre-Morales traditional negligence and personal injury claims were primarily concluded against preemption. See In re Air Crash Disaster at Stapleton International Airport, 721 F. Supp. 1185 (D.Colo. 1988) (no preemption of traditional tort remedies in air crash case), and Stewart v. American Airlines, 776 F. Supp. 1194 (S.D.Tex. 1991) (no preemption where plaintiff was injured when nose wheel deflated).
Heller v. Delta Airlines, Inc., No. CIV.A. 1937(RPP), 1993 WL 330093 (S.D.N.Y.) (August 25, 1993) is another post-Morales case holding that 49 U.S.C.App. § 1305(a), as interpreted by Morales, does not require preemption of a common law negligence claim resulting from an incident when luggage from an overhead bin fell on the plaintiff's head. The Heller Court noted that the purpose of the preemption provision was to ensure that states would not frustrate the purpose of the Airline Deregulation Act, which was to rely on competitive market forces to further "innovation, efficiency, and low prices," as well as "variety [and] quality of air transportation services." Heller, 1993 WL 330093 at *2 (quoting Morales, 504 U.S. ___, ___, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992)). This purpose would not be furthered by the preemption of a state common law negligence action. Clearly, from the language and purpose of section 1305(a), "preemption was not intended to be an insurance policy for air carriers against their own negligence." Heller, 1993 WL 330093 at *2 (quoting Margolis, 811 F. Supp. at 324). See also Hodges v. Delta Airlines, Inc., 4 F.3d 350 (5th Cir.1993) (affirming the lower court's holding that a personal injury action against the airline was preempted by 49 U.S.C.App. § 1305(a)(1), only because it was bound by an earlier decision of the court, and acknowledging that an airline's negligence in allowing a case of rum to be stowed in an overhead bin had no "reference to" airline "services").
The court in Hodges, 4 F.3d at 354, and Margolis, 811 F. Supp. at 324, also reasoned that the Federal Aviation Act was not intended to preempt state common law negligence claims, as such action would leave injured plaintiffs without any remedy for serious physical injury. We also find it difficult to believe that Congress would remove all judicial recourse for an individual injured due to the negligence of an airline employee. Thus, for this reason and the reasons denoted above, we hold that Title 49 U.S.C.App. § 1305(a)(1), does not preempt the Martins' negligence claim. We reverse the lower court's dismissal of the Martins' complaint, and remand for further proceedings.
GLICKSTEIN, J., and DONNER, AMY STEELE, Associate Judge, concur.