718 So.2d 385 (1998)
Jane DOE, mother and legal guardian of John Doe, a minor, Appellant,
v.
AMERICA ONLINE, INC., a foreign corporation, and Richard Lee Russell, individually, Appellees.
No. 97-2587.
District Court of Appeal of Florida, Fourth District.
October 14, 1998.
*386 Brian W. Smith of Law Office of Brian W. Smith, West Palm Beach, for appellant.
L. Martin Reeder, Jr. of Steel Hector & Davis LLP, West Palm Beach, Patrick J. Carome, John Payton, Lynn R. Charytan and Samir Jain of Wilmer, Cutler & Pickering, Washington, D.C., and Randall J. Boe, Dulles, VA, for Appellee-America Online, Inc.
DELL, Judge.
Jane Doe appeals the trial court's order dismissing with prejudice her complaint against America Online, Inc. ("AOL"). She argues that the trial court erred when it considered matters outside the four corners of the complaint, when it denied her leave to amend, when it retroactively applied section 230 of the Communications Decency Act, 47 U.S.C. § 230 et seq. ("CDA"),[1] to her complaint, and when it concluded that under the CDA, AOL is statutorily immune from her claims. We affirm.
On January 23, 1997, Doe filed a six count complaint against Richard Lee Russell and AOL to recover for emotional injuries suffered by her son, John Doe. She claimed that in early 1994, Russell lured John Doe (then eleven years old) and two other minor males to engage in sexual activity with each other and with Russell. She asserted that Russell photographed and videotaped these acts and utilized AOL's "chat rooms" to market the photographs and videotapes, and to later sell a videotape to a man in Arizona.
In count one, Doe alleged that AOL violated section 847.011(1)(a), Florida Statutes (1995), by knowingly allowing and permitting Russell "to sell, distribute, transmit or offer to sell, distribute or transmit photographs and videotape containing the images of the minor Plaintiff, JOHN DOE, which were unlawful and obscene." In count two, she alleged that AOL violated section 847.0135(2), Florida Statutes, the Computer Pornography and Child Exploitation Prevention Act of 1986, by allowing Russell to distribute an advertisement offering "a visual depiction of sexual conduct involving [John Doe]" and by allowing Russell to sell child pornography, thus aiding in the sale and distribution of child pornography. In count three, she claimed that section 847.0135, Florida Statutes, is specifically designed to protect a certain class of persons, and its violation constitutes negligence per se. In her fourth count, Doe asserted a claim for negligence because AOL knew, or should have known, that Russell and others like him used the service to market and distribute child pornographic materials, that it should have used reasonable care in its operation, that it breached its duty, and that the damages to John Doe were reasonably foreseeable as a result of AOL's breach. The two final counts were directed at Russell.
Doe also alleged that AOL, a "computer on-line, interactive information, communication and transaction service" promulgated "Terms of Service" ("TOS") and "Rules of the Road" ("ROR") and required its members to adhere to their terms. She claimed that the TOS and ROR prohibited members from posting or transmitting "unlawful, harmful ... obscene ... or otherwise objectionable" material on AOL, including material encouraging criminal conduct. She also claimed that AOL reserved the right to monitor the public areas and chat rooms to ensure that members adhered to the TOS and ROR and reserved the right to "prohibit conduct, communication, or content which it deems in its discretion to be harmful to individual members, the communities which make up the AOL Service, AOL, INC.'S or other third party rights or to violate any applicable law." (emphasis in original). Further, she claimed that complaints had been communicated to AOL regarding Russell's transmitting obscene and unlawful photographs and/or images, and that although AOL reserved the right to terminate, without notice, the service of any member who did not abide by the TOS, AOL did not warn or advise Russell to stop, nor did it suspend or terminate his service. Doe did not allege that Russell transmitted photographs or images of her son.
AOL moved to dismiss Doe's complaint, arguing that her claims are barred by 47 *387 U.S.C. § 230, the Communications Decency Act, which prohibits civil actions that treat the provider of an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. AOL also argued that Doe's claims were barred because they seek recovery for emotional injuries, and Doe failed to allege physical injury resulting from a physical impact or such egregious conduct to satisfy the exceptions to the impact rule. Finally, AOL argued that Doe's claims under the criminal obscenity statutes, as well as her claim of negligence per se, are barred because violation of these statutes does not create separate causes of action.
The trial court concluded that the immunities provided by section 230 of the CDA applied to Doe's claims and granted AOL's motion to dismiss with prejudice. The trial court stated that "[m]aking AOL liable for Russell's chat room communications would treat AOL as the `publisher or speaker' of those communications." The court also concluded, "Because Section 230 bars all of Doe's claims against AOL, the Court neither reaches nor decides whether AOL's state law grounds for dismissal also bars these claims." The trial court relied on Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 2341, 141 L.Ed.2d 712 (1998), as primary authority for its dismissal. In Zeran, on April 25, 1995, an unidentified person posted a message on an AOL bulletin board advertising "Naughty Oklahoma T-Shirts" featuring offensive and tasteless slogans related to the bombing of the Alfred P. Murrah Federal Building in Oklahoma City. Id. at 329. The person who posted this message instructed those interested in purchasing a shirt to call "Ken" at Zeran's home telephone number, resulting in a large number of angry messages and several death threats. Id. Zeran could not change his telephone number because he operated a business out of his home and needed to keep that number. Id. After he notified AOL about the situation, an employee told him that AOL would remove the posting but would not post a retraction. Id.
The next day, another message was posted advertising similar shirts, instructing interested buyers to call Zeran's home telephone number, and to call back if the phone is busy due to high demand. Id. Over the next four days, more messages were posted on AOL's bulletin board, and after the threatening phone calls intensified, Zeran repeatedly called AOL and was told that "the individual account from which the messages were posted would soon be closed." Id. Within a week of the first message, "Zeran was receiving an abusive phone call approximately every two minutes." Id. After a radio station learned of the posting and announced it on the air, he received so many threatening phone calls that he needed police protection. Id.
On January 4, 1996, Zeran filed suit against the radio station, and on April 23, 1996, he filed suit against AOL. AOL answered the complaint and asserted 47 U.S.C. § 230 as an affirmative defense. Id. The trial court granted AOL's motion for summary judgment on the grounds that section 230 barred Zeran's claims. Id. at 328.
On appeal, Zeran argued that the CDA could not be retroactively applied to bar his claim against AOL for acts occurring prior to its enactment. Section 230 of the CDA became effective on February 8, 1996. The Fourth Circuit Court of Appeals stated, "Section 230 applies by its plain terms to complaints brought after the CDA became effective." Id. at 334. The court stated,
Initially, it is doubtful that a retroactivity issue is even presented here. Retroactivity concerns arise when a statute applies to conduct predating its enactment. Section 230 does not directly regulate the activities of interactive computer service providers like AOL. Instead, § 230 is addressed only to the bringing of a cause of action. Here, Zeran did not file his complaint until over two months after § 230's immunity became effective. Thus, the statute's application in this litigation is in fact prospective.
Id. at 334-35. The court went on to state that even if the facts implicated the application of section 230 to pre-enactment events, the analysis in Landgraf v. U.S.I. Film Prods., 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), would nevertheless require application of section 230 to Zeran's claims:

*388 Landgraf instructs us first "to determine whether Congress has expressly prescribed the statute's proper reach." This case can be resolved at this first step. In § 230(d)(3), Congress clearly expressed its intent that the statute apply to any complaint instituted after its effective date, regardless of when the relevant conduct giving rise to the claims occurred. Other circuits have interpreted similar statutory language to clearly express Congress' intent that the relevant statutes apply to bar new actions under statutorily specified conditions.
....
Section 230 neither imposes any new liability on Zeran nor takes away any rights acquired under prior law. No person has a vested right in a nonfinal tort judgment, much less an unfiled tort claim. Furthermore, Zeran cannot point to any action he took in reliance on the law prior to § 230's enactment. Because § 230 has no untoward retroactive effect, even the presumption against statutory retroactivity absent an express directive from Congress is of no help to Zeran.
Zeran, 129 F.3d at 335 (citations omitted).
Doe argues, as did Zeran, that the trial court erred by applying section 230 to the complaint because it constitutes an improper retroactive application. Here, the events leading to the suit occurred in early 1994. The CDA was enacted on February 8, 1996. Doe did not file her complaint against AOL until January 23, 1997. Zeran establishes that "[s]ection 230 applies by its plain terms to complaints brought after the CDA became effective." Id. at 334. Doe's complaint was filed almost a full year after the CDA became effective. Zeran also provides that Landgraf's retroactive application analysis is not problematic because Congress expressly prescribed section 230's proper reach. Id. at 335. Further, the presumption against statutory retroactivity is of no help where the plaintiff cannot point to any action taken in reliance on the law prior to section 230's enactment. Id. Here, Doe does not allege any action taken in reliance on the law existing prior to section 230's enactment. For the reasons expressed in Zeran, we conclude that the trial court did not retroactively apply section 230 to Doe's complaint.
Doe contends that the trial court considered sources outside the four corners of the complaint when it granted AOL's motion to dismiss based on the CDA. She claims that the court erred by referring to information not contained on the face of the complaint: the statement that "millions of subscribers transmit and receive information through computer modem connections," the definition of electronic mail, the court's discussion that Russell pled guilty and is currently serving prison sentences, the definition of "interactive computer service" as defined in section 230(e)(2), the inclusion of policy statements and legislative history of section 230, and the reference to the Fourth Circuit Court of Appeals' holding in Zeran, 129 F.3d at 327. We agree with AOL that the information alleged in the complaint furnished a sufficient basis for application of the CDA and that the trial court did not err when it made references to the foregoing information.
Doe also argues that the preemption defense based on section 230 of the CDA constitutes an affirmative defense that should have been raised in an answer, not on a motion to dismiss. She cites Martin v. Eastern Airlines, Inc., 630 So.2d 1206 (Fla. 4th DCA 1994), where this court stated that an appellee's "attempt to raise the preemption defense in the instant negligence action by way of a motion to dismiss, without having raised it in the answer is violative of Florida Rule of Civil Procedure 1.110(d)." Id. at 1208. However, rule 1.110(d) provides that "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." Failure to state a cause of action is an affirmative defense under Florida Rule of Civil Procedure 1.140(b). Here, because the predicate facts for the defense of preemption appear on the face of the complaint, the trial court did not err when it considered section 230 as a grounds for dismissal. See Fla. R. Civ. P. 1.110(d).
Doe maintains that section 230 is inapplicable because she seeks to hold AOL liable as a distributor of child pornography, *389 not as a publisher or a speaker. This is the same argument considered by the court in Zeran. Zeran argued that section 230 immunity eliminated publisher liability, but left distributor liability intact because the notice element for distributors permitted liability if AOL had sufficient notice. Id. at 331. In Zeran, the court stated,
By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functionssuch as deciding whether to publish, withdraw, postpone or alter contentare barred.
....
Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.
Id. at 330-31. The Fourth Circuit Court of Appeals then stated,
The simple fact of notice surely cannot transform one from an original publisher to a distributor in the eyes of the law. To the contrary, once a computer service provider receives notice of a potentially defamatory posting, it is thrust into the role of a traditional publisher. The computer service provider must decide whether to publish, edit, or withdraw the posting. In this respect, Zeran seeks to impose liability on AOL for assuming the role for which § 230 specifically proscribes liabilitythe publisher role.

....
If computer service providers were subject to distributor liability, they would face potential liability each time they receive notice of a potentially defamatory statementfrom any party, concerning any message. Each notification would require a careful yet rapid investigation of the circumstances surrounding the posted information, a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information. Although this might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context.
Id. at 332-33 (emphasis added).
It is clear from the trial court's order that it concluded that section 230 preempted the statutory and common laws of the State of Florida. The trial court's conclusion is consistent with Zeran. In Zeran, the court stated,
While Congress allowed for the enforcement of "any State law that is consistent with [§ 230]," 47 U.S.C. § 230(d)(3), it is equally plain that Congress' desire to promote unfettered speech on the Internet must supersede conflicting common law causes of action. Section 230(d)(3) continues: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." With respect to federalstate preemption, the Court has advised: "[W]hen Congress has `unmistakably ... ordained,' that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. The result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."
Id. at 334 (citation omitted).
We hold that the trial court did not err when it denied Doe leave to amend because the complaint cannot be amended to overcome section 230 immunity. For the reasons expressed in Zeran as set forth in this opinion, we affirm the trial court's dismissal of Doe's complaint with prejudice.
We deem the questions raised as to the application of section 230 of the Communications Decency Act to be of great public importance *390 and certify the following questions to the Florida Supreme Court:
Whether section 230 of the Communications Decency Act applies to complaints filed after its effective date where the complaint alleges a cause of action based upon acts occurring prior to its effective date?
If the answer is in the affirmative, whether section 230 of the Communications Decency Act preempts Florida law?
And whether a computer service provider with notice of a defamatory third party posting is entitled to immunity under section 230 of the Communications Decency Act?
AFFIRMED.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] Communications Decency Act, Pub.L. No. 104-104, § 230, 110 Stat. 137 (Feb. 8, 1996).