848 So.2d 374 (2003)
Mitchel KALMANSON, Appellant,
v.
Jerry T. LOCKETT, Appellee.
No. 5D02-3415.
District Court of Appeal of Florida, Fifth District.
May 23, 2003.
Rehearing Denied July 3, 2003.
*376 T.W. Ackert of T.W. Ackert, P.A., Winter Park, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela Lutton-Shields, Senior Assistant Attorney General, Tallahassee, for Appellee.
MONACO, J.
This appeal examines the breadth of the judicial immunity defense. Mitchel Kalmanson, who was the plaintiff below, sought damages and injunctive relief against a sitting judge arising out of actions taken by the judge in Mr. Kalmanson's dissolution of marriage action after the judge had entered an order of recusal. We have concluded that the causes of actions about which Mr. Kalmanson complains are barred by the doctrine of judicial immunity.

ADJUDICATIVE FACTS
Mr. and Mrs. Kalmanson were embroiled in a dissolution of marriage action that was assigned to then Circuit Judge Jerry T. Lockett ("Judge Lockett"), the appellee. After having presided over this controversy for a significant period, Judge Lockett filed an order of recusal in January of 2001, at the request of Mr. Kalmanson, *377 and the matter was reassigned to a different judge.
According to the complaint, about eight months after Judge Lockett recused himself, Mr. Kalmanson and his wife entered into a written property settlement agreement in which Mr. Kalmanson obtained exclusive possession of the former marital residence. Mrs. Kalmanson appeared at the residence shortly after she executed the agreement and demanded access to it to retrieve her personal belongings. Mr. Kalmanson refused.
Deputies from the Lake County Sheriff's Office were called and responded to the marital residence at about 8:00 p.m. The former wife claimed that Mr. Kalmanson was destroying her personal property. A deputy soon ascertained, however, that Mr. Kalmanson was only burning trash in his back yard and that a property settlement had been reached giving Mr. Kalmanson the residence. The complaint further alleges that the former wife then handed her cell phone to the deputy, saying that Judge Lockett was on the line. The complaint continues that the person speaking on the phone was "very angry and further directed said Deputy to order Plaintiff (Mr. Kalmanson) from the residence and out of the area."
The deputy asked his supervisor to go to Judge Lockett's home to confirm the identity of the speaker and "the nature and substance of the Order received." When the supervisor went to Judge Lockett's home, Mr. Kalmanson alleges that Judge Lockett was "very upset, further stated direct threats of physical harm to Plaintiff, and utilized cursing epitaphs [sic] directed towards Plaintiff." The complaint particularizes the conversation by saying that the judge would have the deputy fired unless he removed Mr. Kalmanson from the house, referred to Mr. Kalmanson as a "murderer," and asserted that the judge had killed in Viet Nam and was not afraid to kill again. Finally, according to the complaint, the judge threatened to come to the scene and attack the deputy, Mr. Kalmanson and Mr. Kalmanson's attorney, and his actions were "actuated by malice." According to the briefs filed in this court, the matter was concluded when the assigned judge ordered both parties from the home until the following day when he could sort things out. Both parties complied.
Mr. Kalmanson sought damages from Judge Lockett for "Personal acts in Excess of Jurisdiction," and for defamation.[1] Mr. Kalmanson also sought injunctive relief based on the interference of the judge with the quiet enjoyment of his residence, but this issue is largely moot because Judge Lockett no longer holds office. In any event, the trial court granted Judge Lockett's motion to dismiss all counts based on judicial immunity.
At the conclusion of the hearing on the motion to dismiss and after the trial court announced her ruling, Mr. Kalmanson's counsel inquired if the dismissal was with prejudice "for purposes of appeal." The court agreed that it was. Mr. Kalmanson timely moved for rehearing a short time later and for the first time urged that the dismissal should have been without prejudice, and that leave to amend should have been granted. Mr. Kalmanson attached a proposed amended complaint to his motion in which he sought to state causes of action for tortious interference with property rights, tortious interference with economic *378 rights, assault or, alternatively, intentional infliction of emotional distress, permanent injunction, defamation, and abuse of process. All counts were based on essentially the same facts that are recited above. After the trial court denied the motion for rehearing, this appeal ensued.

JUDICIAL IMMUNITY
Judicial immunity was first clearly articulated about 400 years ago in the case of Floyd & Barker, 12 Coke Rep., 77 Eng. Rep. 1305 (Star Chamber 1607). Lord Coke advised that judicial immunity insures the finality of judgments, protects judicial independence, deflects regular attacks on judges, and protects the legal system from falling into disrepute. Shaman, Lubet & Alfini, Judicial Conduct and Ethics, 441 (1990). In more recent times the rationale for judicial immunity includes the important public policies of protecting the finality of judgments, discouraging inappropriate collateral attacks, and preserving judicial independence by insulating judges from lawsuits by unsatisfied litigants. See Forrester v. White, 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). After recognizing that unfairness and injustice to an individual litigant might result from the doctrine of judicial immunity, the United States Supreme Court summed up the necessity for the application of this doctrine in Bradley v. Fisher, 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed. 646 (1871):
[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.
Judicial immunity, which is unquestionably one of the cornerstones of judicial independence, is an immunity from suit, not just from an assessment of damages. Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). It is not overcome by allegations of bad faith or malice, because a determination of these and similar assertions would require discovery and trial. See Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Rather, the United States Supreme Court has drawn a line between where immunity applies and where it does not.
In Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Court reaffirmed some older precedents in holding that "a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors," and then articulated a sequential two-part test to be applied. The first part seeks to discover whether the conduct of the judge is a "judicial act." If so, the second part asks whether the judge acted in the clear absence of all jurisdiction. Put differently, a judge is not immune from liability for nonjudicial actions (i.e., actions not taken in a judicial capacity), and a judge is not immune for actions, even though judicial in nature, that are taken in the complete absence of jurisdiction. Mireles, 502 U.S. at 11-12, 112 S.Ct. 286.
To help determine whether the conduct is a "judicial act," we must consider the following four attributes or functions of judicial actions: (a) whether the precise conduct was in performance of a normal judicial function; (b) whether the event occurred in the courtroom or judge's chambers; (c) whether the controversy centered around a case pending before the judge; and (d) whether the confrontation arose directly or immediately out of a visit to the judge in his judicial capacity. Mireles; Stump, 435 U.S. at 361-362, 98 S.Ct. 1099; McAlester v. Brown, 469 F.2d 1280 *379 (5th Cir.1972). If the act is determined to be a judicial act, it is protected by judicial immunity, no matter how unfair, injurious or inappropriate it might be, provided it meets the second prong of the test concerning jurisdiction.
The second prong requires us to construe the scope of the judge's jurisdiction in an extremely broad fashion. As noted, a judge will be deprived of judicial immunity only if the judge acted in the clear absence of all jurisdiction over the subject matter. Stump; see also Harper v. Merckle, 638 F.2d 848 (5th Cir.) cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981); Farish v. Smoot, 58 So.2d 534 (Fla.1952). Moreover, as will become clear in the following analysis, the question is really whether the court, as opposed to an individual judge, has jurisdiction over the subject matter of the dispute between the parties.

LEGAL ANALYSIS

A. WERE THE ACTS JUDICIAL?
The first part of the functional analysis set forth by the Stump court in defining a judicial act requires a determination of whether Judge Lockett's actions were in the performance of a normal judicial function. The nature or function of the acts of Judge Lockett being examined were verbal orders to law enforcement officers to enjoin a litigant in a dissolution of marriage case from access to property that was part of the estate being divided. This category of act is clearly one within the general authority of a circuit judge. Chapter 61, Florida Statutes, outlines in great detail the broad powers of circuit judges presiding over dissolution of marriage cases. Section 61.011 specifically provides that these proceedings are "in chancery," and accordingly authorizes circuit judges to use the tools of equity, including injunctions, to manage such cases to a fair conclusion. See Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997). Moreover, verbal orders to law enforcement officers, "while not preferred, are necessary at times," and are generally enforceable. See Jamason v. State, 455 So.2d 380, 381 (Fla. 1984), cert. denied, 469 U.S. 1100, 105 S.Ct. 768, 83 L.Ed.2d 766 (1985). Thus, Judge Lockett's alleged conduct, while regrettable if true, was in the performance of a normal judicial function, and met the requirements of the first part of the definition of a judicial act.
Whether the conduct met the second part is far less clear. The second facet of the Stump court's test requires us to examine whether the event occurred in the courtroom or judge's chambers. The actions of Judge Lockett were at his home and were initiated by telephone. It is not unusual, however, for trial court judges to be contacted by telephone by law enforcement officials seeking, for example, consideration of an emergency search or arrest warrant or a temporary injunction to prevent domestic violence. Thus, the fact that the dispute was brought to the attention of Judge Lockett by telephone call beyond the normal working day does not alter the essential character of his actions as judicial. That the actions of Judge Lockett were not surrounded by the usual formalities is likewise not, in itself, determinative where the other factors suggest that the acts were judicial. In Stump, for example, a judge's order to sterilize a 15 year old without her knowledge was protected by judicial immunity, even though the case was not assigned a docket number, was not on file in the clerk's office, and was ordered at an ex parte hearing without notice to the minor or a hearing. Similarly, in McAlester v. Brown, 469 F.2d 1280 (5th Cir.1972), a judge ordered a courthouse visitor to be jailed, even though the visitor was not charged with contempt, *380 and even though normal court procedures were not followed. Immunity was accorded to the judge because the confrontation arose out of a visit to the judge in his official capacity.
The third and fourth parts of the testwhether there was a pending case before the judge, and whether the confrontation arose out of a visit to the judge in his judicial capacitylend weight to the determination that Judge Lockett's actions were judicial. He was unquestionably contacted specifically because he was a circuit judge, and the case was, in fact, pending in the Circuit Court of Lake County. Judge Lockett was approached solely and exclusively because he was a judge, even though the approach was made outside of the usual business day and outside of the courtroom.
We conclude, in summary, that the actions of Judge Lockett fall within the definition of judicial acts set forth in Stump.

B. WERE THE ACTS TAKEN IN THE CLEAR ABSENCE OF JURISDICTION?
Having concluded that the actions of Judge Lockett were judicial in function, we now must determine whether his actions were taken in the clear absence of all subject matter jurisdiction. There is no doubt that a dissolution of marriage action between Mr. and Mrs. Kalmanson was pending in the Circuit Court of Lake County, and that the Circuit Court of Lake County had subject matter jurisdiction over the dispute at the time that Judge Lockett acted. The pivotal issue is whether the fact that Judge Lockett had earlier recused himself from the case means that the actions in question were taken in the clear absence of all subject matter jurisdiction. We hold that they do not.
Actions that are merely in "excess of jurisdiction" over the subject matter are still protected by immunity. Mireles, 502 U.S. at 13, 112 S.Ct. 286; Stump, 435 U.S. at 356, 98 S.Ct. 1099. The United States Supreme Court held in Bradley in this regard as follows:
A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Stump, 435 U.S. at 356 [98 S.Ct. 1099], quoting Bradley, 13 Wall. at 351-352, 20 L.Ed. 646.
The circuit court had subject matter jurisdiction over the dispute and personal jurisdiction over the parties. Jurisdiction is vested in the court itself, and not in any individual judge of the court. See Allen v. Bridge, 427 So.2d 249, 250 (Fla. 4th DCA 1983); Kruckenberg v. Powell, 422 So.2d 994 (Fla. 5th DCA 1982); cf. State ex rel. Palmer v. Atkinson, 116 Fla. 366, 156 So. 726 (1934). If the allegations of the complaint are true, Judge Lockett's individual actions most probably violated Rule 2.160(f), Fla. R. Jud. Admin., in that he should have taken no further actions in the suit, except for certain ministerial acts. See Berry v. Berry, 765 So.2d 855 (Fla. 5th DCA 2000). His recusal, however, did not diminish the jurisdiction of the circuit *381 court over this case. We cannot say, therefore, that his actions were taken in clear absence of all jurisdiction. We note, as well, that we are in consonance with the only appellate decisions that we have found on this point. See Generes v. Foreman, 277 Ill.App.3d 353, 214 Ill.Dec. 1, 660 N.E.2d 192, 194 (1995); DeNardo v. Michalski, 811 P.2d 315 (Alaska 1991).

ABSENCE OF OPPORTUNITY TO AMEND
Finally, we must address the fact that the trial judge granted the motion to dismiss with prejudice without giving Mr. Kalmanson the opportunity to amend. We again find no error.
Florida follows a liberal policy of allowing litigants the freedom to amend their pleadings so that cases can, if at all possible, be tried on the merits. Normally, the lower court should allow a party to amend at least once. Dingess v. Florida Aircraft Sales and Leasing, Inc., 442 So.2d 431 (Fla. 5th DCA 1983). Here, however, the pertinent facts material to this appeal are generally not in dispute, and the proposed amended complaint submitted with the motion for rehearing below does nothing to improve Mr. Kalmanson's position. As an amendment of the complaint would have been futile, there was no need in this instance to allow another opportunity. See Doe v. America Online, Inc., 718 So.2d 385, 389 (Fla. 4th DCA 1998), approved, 783 So.2d 1010 (Fla.), cert. denied, 534 U.S. 891, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001) (complaint could not be amended to overcome immunity).

CONCLUSION
No trial has been held to determine if the actions of Judge Lockett alleged in the complaint actually occurred. If they did, it is difficult to imagine why any judge would act so excessively. We certainly do not by any means intend to condone them. The fact that these actions might be condemned as unethical or excessive, and may be grounds for removal of a judge from office, however, does not transform them into something they are not. The actions of Judge Lockett were judicial acts taken within the jurisdiction of the court, and are, therefore, subject to the doctrine of judicial immunity.
AFFIRMED.
PLEUS and TORPY, JJ., concur.
NOTES
[1] Because of the manner in which this case was disposed of below, the issue of whether there exists a cause of action for "Personal Acts In Excess of Jurisdiction" was not reached by the trial court and has not been argued in this court. Thus, no opinion is expressed with respect to its viability.