# Third District Court of Appeal

## State of Florida

Opinion filed August 13, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0825
Lower Tribunal No. 24-17931-CA-01
_____

**Robert A. Harris,**
Petitioner,

vs.

**Michael Dazzo,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Day Pitney LLP, and Andrew R. Ingalls and Alfredo E. Dally, for petitioner.

Berkeley Law, P.A., and Lorne E. Berkeley (Cooper City), for respondent.

Before FERNANDEZ, MILLER, and GOODEN, JJ.

GOODEN, J.

Petitioner Robert Harris seeks a writ of certiorari to quash an order denying his motion to dismiss asserting arbitral immunity. Finding Harris established the elements for certiorari relief, we grant the petition and quash the order.

**I.**

Respondent Michael Dazzo is a Class A owner of Alternative Global Management, LLC. He and the other Class A owners of Alternative Global Management, LLC agreed to dissolve the company. Their agreement required all disputes be resolved by the American Arbitration Association ("AAA") before a three-member panel where each party selects one arbitrator, and the two party-appointed arbitrators select the third neutral. The third neutral acts as the chairperson of the panel. It further provided that the arbitrators would be bound by the company's agreement.

Through a ranking selection process administered by the AAA, Harris was offered the position as the third neutral and chairperson. AAA required Harris to complete a General Arbitrator Oath Form, which provided,

> I further affirm that consistent with the applicable Rules of the American Arbitration Association, the Code of Ethics for Arbitrators in Commercial Disputes, the parties' agreement, and applicable law:
> - That I am fit to serve on the above-referenced arbitration and able to fully execute my responsibilities during all phases of the case;

2

- That I will keep confidential all matters relating to the above-referenced arbitration;
- That I will maintain a professional demeanor and appearance of impartiality during all phases of this case;
- That I will endeavor to effectively manage all phases of this case with a commitment to speed, economy and just resolution in a manner consistent with the parties' expectations;
- That I will bill parties responsibly and ethically and will review my bills for reasonableness relative to the nature and scope of the activity performed prior to submitting them to the AAA.

After issues arose in the arbitration process, Dazzo lodged a formal objection with the AAA and sought to remove Harris. In October 2024, the AAA's Administrative Review Council removed Harris from the arbitration panel, stating,

On October 8, 2024, the AAA's Administrative Review Council ("Council") considered the Claimant's objection to the continued service of Arbitrator Harris and any response received. After careful consideration of the parties' contentions, the Council has determined that Arbitrator Harris shall be removed in this case. This decision will be made a part of our administrative file.

The AAA's rule on disqualification provides that an arbitrator shall be subject to disqualification for partiality or lack of independence, inability or refusal to perform his or her duties with diligence and in good faith, and any grounds for disqualification provided by applicable law. The Council has carefully reviewed and considered the parties' submissions in this matter. Based upon the Council's Review Standards available at https://www.adr.org/arc, to which the parties were previously referred, the Council is removing Arbitrator Harris.

3

Separately, Dazzo filed suit against Harris asserting claims for breach of contract and fraud in the inducement. Dazzo says that Harris acted in a manner that prejudiced the arbitration proceedings and ran counter to the General Arbitrator Oath and the parties' agreement. These alleged acts include: excluding Dazzo's party-appointed arbitrators from deliberations;[1] failing to review Dazzo's submissions; refusing to permit conferences or schedule oral arguments; circulating a prejudicial and biased order to the other panelists; filing a response to Dazzo's objections without deliberating with the remaining arbitrators; providing unreasonably short deadlines for objections to proposed orders; disregarding panel members' schedules; requiring the parties to engage in costly, burdensome, and irrelevant discovery; issuing false and gratuitous comments about Dazzo and his counsel, and accusing Dazzo of collusion. Dazzo maintains that these actions unnecessarily prolonged the proceedings at significant costs to the parties, in contradiction to Harris' promises of speed, efficiency, and impartiality in his AAA Oath—which was executed before arbitration and to entice the parties to select him.

---

[1] Dazzo's first party-appointed arbitrator resigned, citing Harris' "extreme prejudice and bias against Claimants." Dazzo's second party-appointed arbitrator also resigned, stating that Harris' actions prevented reasonable and meaningful time to evaluate rulings and may unfairly prejudice Dazzo and other claimants.

4

Citing section 682.051, Florida Statutes, Harris moved to dismiss asserting arbitral immunity. He maintained that the allegations relate entirely to his decisions and conduct as an arbitrator. Dazzo responded that his claims are based on Harris' pre-arbitration representations in the AAA oath, and therefore, arbitral immunity does not apply.

After hearing argument from the parties, the trial court accepted Dazzo's arguments and denied the motion. In support, it relied upon cases from other jurisdictions. See, e.g., Greenspan v. LADT, LLC, 111 Cal. Rptr. 3d 468 (Cal. Ct. App. 2010) (holding arbitral immunity barred an investor's civil suit against the arbitrator alleging that arbitrator failed to issue a timely award as required by arbitration provider's rules); Baar v. Tigerman, 211 Cal. Rptr. 426 (Cal. Ct. App. 1983) (superseded by statute) (rejecting claim of arbitral immunity where arbitrator breached his contractual obligation to render a timely award; under California law, arbitrator loses jurisdiction if award not timely made). Harris timely petitioned this Court for a writ of certiorari.

## II.

The common law writ of certiorari is an "extraordinary remedy." Broward Cnty. v. G.B.V. Int'l., Ltd., 787 So. 2d 838, 842 (Fla. 2001). It "allows a superior court to direct a lower tribunal to inform it of the events below in a

5

pending case so that the superior court can review the proceedings for regularity." M.M. v. Fla. Dep't of Child. & Fams., 189 So. 3d 134, 138 (Fla. 2016). "The writ functions as a safety net and gives the upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists." Broward Cnty., 787 So. 2d at 842.

Generally, certiorari review is not available to review orders denying a motion to dismiss. Univ. of Fla. Bd. of Trs. v. Carmody, 372 So. 3d 246, 252 (Fla. 2023). Before a Court may grant certiorari relief from a denial of a motion to dismiss, a party must demonstrate a departure from the essential requirements of the law that results in material injury that cannot be corrected on plenary appeal. Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004). The last two showings are jurisdictional in nature.

Certiorari relief has been traditionally available for a trial court's rejection of claims of absolute immunity—as it involves immunity from suit. See Univ. of Miami v. Ruiz ex rel. Ruiz, 164 So. 3d 758, 763 (Fla. 3d DCA 2015); Fuller v. Truncale, 50 So. 3d 25, 30 (Fla. 1st DCA 2010). Being forced to defend the suit when immune is irreparable harm. Mills v. Kinnan, No. 2D2024-0891, 2025 WL 1006826, at *3 (Fla. 2d DCA Apr. 4, 2025). See also Fla. State Univ. Bd. of Trs. v. Monk, 68 So. 3d 316, 318 (Fla. 1st DCA 2011) ("[A]bsolute immunity protects a party from having to defend a lawsuit

6

at all, and waiting until final appeal to review an order denying dismissal on immunity grounds renders such immunity meaningless if the lower court denied dismissal in error."); Crowder v. Barbati, 987 So. 2d 166, 167 (Fla. 4th DCA 2008) ("Thus, any remedy that enforced immunity upon final appeal, after the case had been fully defended, would be meaningless."). But certiorari relief is not available for a mere defense to liability. See Vericker v. Powell, 406 So. 3d 939, 945 (Fla. 2025); Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc., 104 So. 3d 344, 353 n.6 (Fla. 2012).

Accordingly, we must determine whether arbitrators are protected by absolute immunity or simply provided a defense to liability.

**A.**

Arbitration is a "process whereby a neutral third person or panel, called an arbitrator or arbitration panel, considers the facts and arguments presented by the parties and renders a decision which may be binding or nonbinding." § 44.1011(1), Fla. Stat. (2025). It is "an alternate forum for litigation where the competing parties have the chance to present evidence to a finder of fact." Progressive Am. Ins. Co. v. Broward Ins. Recovery Ctr., LLC, 322 So. 3d 103, 105 (Fla. 4th DCA 2021). The proceedings are quasi-judicial in nature. Cassara v. Wofford, 55 So. 2d 102, 106 (Fla. 1951). "Although not conducted with the same degree of formality as a judicial

7

proceeding, arbitration proceedings are impressed with the same procedural safeguards." Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc., 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013).

Floridians have used arbitration for over 200 years. It existed both at common law and by statute. See Johnson v. Wells, 73 So. 188, 190 (Fla. 1916); Gaines Constr. Co. v. Carol City Utils., Inc., 164 So. 2d 270, 272 (Fla. 3d DCA 1963). Indeed, laws concerning arbitration have existed since Florida was a territory. See Fla. Terr. Acts 1828, p.190 ("That it shall and may be lawful for all persons desirous of ending any matter of difference, controversy or quarrel, in which any action at law or in equity will lie, . . . to agree that their said matter of difference, controversy or quarrel shall be adjusted and determined by arbitration . . . ."). See also Comp. Gen Laws. 1927, § 4552-4559.

In 1957, the Florida Legislature created the Florida Arbitration Code. Ch. 57-402, Laws of Fla. The Code was based on the 1955 Uniform Arbitration Act, which was adopted by the National Conference of Commissioners on Uniform State Laws. It provided a framework governing the rights and procedures for arbitration. It was subsequently transferred to another chapter in 1967, but remained unchanged for years. See Ch. 67-254, Laws of Fla.

8

In 1989, the Legislature enacted additional laws concerning alternative dispute resolution. These granted civil judges the authority to refer cases to mediation and arbitration. See Ch. 89-31, Laws of Fla. One section provided that the mediator and arbitrator have "judicial immunity in the same manner and to the same extent as a judge." Id. at § 5. This statute is still in effect today. See § 44.107, Fla. Stat. (2025).

Twenty-four years later, the Florida Legislature performed an overhaul and revised the Arbitration Code. Ch. 2013-232, Laws on Fla. This revised Code was based on the 2000 Uniform Arbitration Act, which was also approved by the National Conference of Commissioners on Uniform State Laws. Fla. S.B. 530 (2013) Staff Analysis, 3 (Mar. 15, 2013). It granted arbitrators immunity "from civil liability." Ch. 2013-232, § 15, Laws on Fla. See also Unif. Arbitration Act 2000 § 14, cmt. 1 ("In addition to the grant of immunity from a civil action, arbitrators are also generally accorded immunity from process when subpoenaed or summoned to testify in a judicial proceeding in a case arising from their service as arbitrator. This full immunity from any civil proceedings is what is intended by the language in Section 14(a).") (internal citations omitted).

Florida's Revised Arbitration Code is now found in Chapter 682. Section 682.051, Florida Statutes, provides:

9

(1) An arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity.

(2) The immunity afforded under this section supplements any immunity under other law.

(3) The failure of an arbitrator to make a disclosure required by s. 682.041 does not cause any loss of immunity under this section.

(4) In a judicial, administrative, or similar proceeding, an arbitrator or representative of an arbitration organization is not competent to testify, and may not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of this state acting in a judicial capacity. This subsection does not apply:

> (a) To the extent necessary to determine the claim of an arbitrator, arbitration organization, or representative of the arbitration organization against a party to the arbitration proceeding; or

> (b) To a hearing on a motion to vacate an award under s. 682.13(1)(a) or (b) if the movant establishes prima facie that a ground for vacating the award exists.

(5) If a person commences a civil action against an arbitrator, arbitration organization, or representative of an arbitration organization arising from the services of the arbitrator, organization, or representative or if a person seeks to compel an arbitrator or a representative of an arbitration organization to testify or produce records in violation of subsection (4), and the court decides that the arbitrator, arbitration organization, or representative of an arbitration organization is immune from civil liability or that the arbitrator or representative of the organization is not competent to testify, the court shall award to the arbitrator, organization, or representative reasonable attorney fees and other reasonable expenses of litigation.

§ 682.051, Fla. Stat. (2025). "Arbitrator" is defined as "an individual appointed to render an award, alone or with others, in a controversy that is subject to an agreement to arbitrate." § 682.011(2), Fla. Stat. (2025).

Pertinent to our analysis is the phrase, "civil liability to the same extent as a judge of a court of this state acting in a judicial capacity." § 682.051(1), Fla. Stat. In Florida, judges are cloaked with absolute immunity for acts performed in their judicial capacities. Johnson v. Harris, 645 So. 2d 96, 98 (Fla. 5th DCA 1994). See also Berry v. State, 400 So. 2d 80, 83 (Fla. 4th DCA 1981) ("[I]t is not a tort for the judiciary to judge."). It is "an immunity from suit, not just from an assessment of damages." Kalmanson v. Lockett, 848 So. 2d 374, 378 (Fla. 5th DCA 2003). Accord Mireles v. Waco, 502 U.S. 9, 11 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.").

Yet Dazzo focuses on the words "acting in that capacity." He claims it means that the immunity is not absolute. Not so. This simply means that the person must be acting in his role as an arbitrator to receive the immunity—not that the immunity is a mere defense to liability. This is like judicial immunity, which applies to "judicial acts." See Fuller, 50 So. 3d at 28 ("A judge or quasi-judicial official may claim judicial immunity if he can

11

demonstrate two prerequisites: (1) the ruling in question was a 'judicial act;' and (2) there was jurisdiction to issue the ruling.").

At bottom, arbitral immunity is absolute in nature. It is immunity from suit. Kidwell v. Gen. Motors Corp., 975 So. 2d 503, 505 (Fla. 2d DCA 2007). Dragging an arbitrator into a litigation causes material harm that cannot be corrected on plenary appeal. Fuller, 50 So. 3d at 28. Certiorari relief is available.

**B.**

Next, we must determine whether the trial court departed from the essential requirements of the law by denying the motion to dismiss. To do so, we need to examine the complaint's allegations and determine whether they show that Harris was acting in the capacity of arbitrator. See generally Henry v. City of Mount Dora, 371 So. 3d 386, 390 (Fla. 5th DCA 2022) ("To determine whether conduct constitutes a 'judicial act' for purposes of immunity, the court should consider (a) whether the precise conduct was performed as a normal judicial function; (b) whether the event occurred in the courtroom or in chambers; (c) whether the controversy centered around a case pending before the judge; and (d) whether the confrontation arose directly or immediately out of a visit to the judge in his judicial capacity.").

In the complaint, Dazzo alleges that Harris executed the AAA Oath and he breached that agreement. Specifically, he claims Harris excluded party-appointed arbitrators from deliberations and decisions, failed to review submissions, refused to permit conferences or schedule oral arguments, circulated a prejudicial order, filed a response to Dazzo's objections without deliberating with others, provided unreasonably short deadlines, disregarded other panel-members' schedules, made gratuitous comments, and accused Dazzo of collusion. Dazzo maintains that these actions were in contravention of his AAA Oath and unnecessarily prolonged the proceedings.

Our review leads us to one conclusion—these allegations fall squarely within Harris' role as an arbitrator. While Dazzo tries to frame this as a breach of Harris' pre-arbitration AAA Oath, Harris was acting in the capacity of an arbitrator. § 682.051(1), Fla. Stat. These events occurred during, and are centered around, the arbitration proceeding. Indeed, they were integrally related to the arbitral process. What is more, the AAA Administrative Review Council expressly removed Harris for these arbitral acts.

To this end, absolute immunity attaches. Harris' immunity is not overcome by allegations of bad faith, malice, or incompetence, such as

13

these. <u>Kalmanson</u>, 848 So. 2d at 378. The existence of the oath or an arbitration agreement does not override the immunity.

And so, the trial court departed from the essential requirements of the law—section 682.051, Florida Statutes. <u>See</u> <u>Allstate Ins. Co. v. Kaklamanos</u>, 843 So. 2d 885, 890 (Fla. 2003). It failed to apply the correct law. <u>Haines City Cmty. Dev. v. Heggs</u>, 658 So. 2d 523, 530 (Fla. 1995). This resulted "in a miscarriage of justice." <u>Combs v. State</u>, 436 So. 2d 93, 96 (Fla. 1983).

## III.

Dazzo warns this Court that if we grant certiorari we will be setting "dangerous precedent." Quite the opposite. If we were to follow Dazzo's reasoning, all arbitrators and judges would be opened to litigation. A disgruntled litigant would simply need to cite their oath of office. This simply cannot be. <u>See</u> <u>Harris</u>, 645 So. 2d at 97–98 (citing <u>Sparks v. Duval Cnty. Ranch Co., Inc.</u>, 604 F.2d 976, 979–80 (5th Cir. 1979)) ("[T]he absolute immunity that judges enjoy exists for the benefit of the judicial system and of the public, not for that of the judge. Only a hero could exercise an unfettered judgment while facing, day after day and case after case, the prospect of personal ruin implicit in permitting every losing party to sue him for damages."); <u>New England Cleaning Servs., Inc. v. Am. Arb. Ass'n</u>, 199 F.3d

14

542, 545 (1st Cir. 1999) ("As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.").

Accordingly, we grant the petition for writ of certiorari and quash the order denying Harris' motion to dismiss. Harris is entitled to absolute immunity. The lawsuit should be dismissed.

Petition granted; order quashed.