889 So.2d 812 (2004)
Allison Gae REEVES, etc., Petitioner,
v.
FLEETWOOD HOMES OF FLORIDA, INC., et al., Respondents.
No. SC03-134.
Supreme Court of Florida.
December 16, 2004.
*813 Kevin A. Ashley and Robin Gibson of Gibson, Valenti and Ashley, Lake Wales, FL and John H. Shannon, Lakeland, FL, for Petitioner.
John W. Frost, II and Peter W. Van Den Boom of Frost, Tamayo, Sessums and Aranda, P.A., Bartow, FL, for Respondent.
Jacqulyn Mack, Englewood, FL, on behalf of the Academy of Florida Trial Lawyers as Amicus Curiae.
LEWIS, J.
We have for review Fleetwood Homes of Florida, Inc. v. Reeves, 833 So.2d 857 (Fla. 2d DCA 2002), in which the Second District Court of Appeal certified the following questions of law to be of great public importance:
1. MAY A DISTRICT COURT REVIEW A NONFINAL ORDER DENYING, "AS A MATTER OF LAW," A MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WORKERS' COMPENSATION IMMUNITY IF IT IS CLEAR THAT THE TRIAL COURT INTENDS TO SUBMIT THE ISSUE OF GROSS NEGLIGENCE OR INTENTIONAL TORT TO THE JURY AS A QUESTION OF FACT?
2. IF AN EMPLOYER ALLOWS ITS EMPLOYEES TO PERFORM A NEGLIGENT PROCEDURE REPEATEDLY AND FOR A LONG PERIOD, MAY THE FIRST INCIDENT IN *814 WHICH THE PROCEDURE RESULTS IN INJURY OR DEATH BE TREATED AS AN INTENTIONAL TORT UNDER TURNER V. PCR, INC., 754 So.2d 683 (Fla.2000)?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because we answer the first certified question in the negative, and hold that the Second District did not have jurisdiction to review the nonfinal order of the circuit court, we decline to address the second certified question.

FACTS
Allison Reeves, the personal representative of the estate of Dennis Reeves, filed a wrongful death action against Dennis Reeves's employer, Fleetwood Homes of Florida (hereinafter "Fleetwood"), and two of Fleetwood's employees, Marvin Miller and Mickie Oliver. See Fleetwood Homes, 833 So.2d at 859. The Second District ably detailed the relevant facts of the accident that resulted in Dennis Reeves's death:
Dennis Reeves was an employee of Fleetwood, which manufactures homes in a factory. Although he normally had another job assignment, on April 1, 1991, he was assigned to work at a table inside the factory. The table was adjacent to an aisle used by the forklift operators to move supplies into the factory. A structural column that supported the roof of the factory was across the aisle from this table. A pipe ran up the aisle side of this column. Because of the layout of the factory near this column, for a distance of about 25 feet, the aisle was narrower at ground level than the width of some of the supplies that were transported by the forklifts. As a result, the forklift operators had been instructed to raise wide loads to approximately 14 feet in the air.
A common wide load that was transported by the forklifts was sheet metal used as roofing material for the manufactured homes. This sheet metal came in rolls that weighed about 600 pounds and were about 12-feet wide. The forklifts transported three rolls per trip. The roofing material was not strapped onto the forklifts. When the roofing material was raised 14 feet in the air, the forklift operators did not have a clear view of the column and had only a few inches of clearance. They relied upon a painted stripe on the floor to properly position their forklifts to negotiate this narrow location.
When a forklift entered the factory, the operator honked its horn. This was a signal for nearby workers to move out of the way. Affected workers were instructed to heed the warning provided by the horn, but workers did not always respond to the horn. The management at Fleetwood had instructed the forklift operators to continue transporting their loads even if another worker did not move. They were expected to report such a problem to management at a later time. Because Mr. Reeves had never worked at this table prior to the day of the accident, it is unclear whether he had been instructed to heed the horn.
On the day of this accident, Marvin Miller was the forklift operator. He sounded the forklift's horn as he entered this area with rolls of sheet metal. He did not know Mr. Reeves. He observed that Mr. Reeves was not leaving the table. He continued to transport the roofing material. As he was negotiating the narrow location by the column and the pipe, he was watching the painted marking on the floor for proper positioning. For some reason, the roofing material hit the pipe. The load was knocked off balance and a roll of the sheet metal slid off the driver's left side of the forklift, striking Mr. Reeves. He sustained *815 severe injuries and died shortly after this accident.
The management at Fleetwood knew that forklift operators had occasionally bumped this pipe when transporting wide loads. Mr. Miller's foreman, Mickie Oliver, also knew that forklift operators had struck this pipe. There is no evidence, however, that a roll of roofing or any other wide load had ever previously fallen from a forklift or that any worker had ever been injured as a result of this procedure. Mr. Miller was a very experienced forklift operator. He had performed this maneuver on many occasions in the past. There is no evidence that he had any prior history of accidents, that he was driving too fast or recklessly at the time of this accident, or that he was under the influence of any unlawful substance. He simply misjudged the location of the pipe or the position of his load, and the accident happened.
OSHA investigated this accident. It declined to treat the accident as a willful violation of safety regulations. OSHA fined Fleetwood $7000 and ordered certain corrective action. Fleetwood is still allowed to raise wide loads into the air, but it now secures these elevated loads. It requires the forklift operators to clear employees from this area before transporting such loads. Fleetwood is taking greater steps to make certain that all employees are aware of this danger. Although it apparently was not required by OSHA, Fleetwood has moved the table away from the location of this accident.
Id. at 859-61.
Allison Reeves's second amended complaint contained six counts, only three of which are relevant to our review.[1] Count four of the amended complaint alleged gross negligence against the forklift operator, Marvin Miller. Similarly, count five alleged gross negligence against Miller's foreman, Mickie Oliver. Finally, count six alleged that Fleetwood had engaged in "conduct substantially certain to result in Dennis Reeves's injury or death," i.e., the complaint alleged that Fleetwood had committed an intentional tort. The Second District explained the substance of the counts:
The fourth count attempted to allege gross negligence as to the conduct of Mr. Miller. It alleged that (1) he knew, prior to this accident, that other workers had not been getting out of his way when he drove the elevated loads; (2) he knew Mr. Reeves did not respond to his warning and remained in an area of danger at the time of this accident; (3) he knew he had poor visibility and a small margin of error in which to maneuver this elevated load; (4) he knew the load was not secured; and (5) he knew these procedures were dangerous and a violation of safety policies. This count included an allegation that Mr. Miller had engaged in a course of conduct that a reasonably prudent person would know was probably and most likely to result in injury to persons.
The fifth count attempted to allege gross negligence against the foreman, Mr. Oliver. It realleged the risks described in the count against Mr. Miller and explained that Mr. Oliver was an experienced forklift operator who worked essentially as a foreman with the responsibility to supervise Mr. Miller's work and to assure that it was performed safely. The complaint concluded that he too should have known that *816 these circumstances were probably and most likely to result in injury to persons.
The sixth count attempted to allege an unspecified intentional tort against Fleetwood. It realleged the conduct of Mr. Miller and Mr. Oliver. It alleged that management at Fleetwood had knowledge of these circumstances. It alleged that Fleetwood pressured its workers to maintain a high degree of productivity and did not provide adequate safety training or properly respond to the known safety issues created by the forklifts. It concluded that the "course of conduct" of the Fleetwood employees was such that a reasonably prudent person would know that it was "substantially certain to result in injury or death."
Id. at 861.
After the action had been pending for a number of years and the parties had engaged in extensive discovery, Fleetwood and its employees requested the entry of a summary final judgment. See id. The respondents argued that they were entitled to immunity pursuant to the Workers' Compensation Act, section 440.11 of the Florida Statutes (Supp.1990). The trial court conducted a lengthy hearing and ultimately denied the respondents' motion for summary judgment. See id.
With respect to counts four and five of the second amended complaint (the claims of gross negligence against the forklift operator and his foreman), the trial court explained in its written order:
[T]he Court finds that the occurrence of the subject incident was inevitable, given the violations alleged by plaintiff (which are disputed by defendant but, which must be accepted as true on a Motion for Summary Judgment).
The facts of this case and the allegations of the plaintiff, viewed in the light most favorable to the plaintiff, create a factual basis for a composite of circumstances which, together, constituted an imminent or clear and present danger amounting to more than normal and usual peril, show a chargeable knowledge or awareness of the imminent danger, and evince a conscious disregard of consequences. These circumstances taken in combination presented a high risk of serious injury.
Therefore, as to these Counts, as a matter of law, the defendants' Motion should be DENIED.
(Citation omitted.) Regarding count six (asserting that Fleetwood committed an intentional tort), the trial court reasoned:
Mickie Oliver, as the agent of Fleetwood, had knowledge of the violations alleged by plaintiff.
Oliver's knowledge is chargeable to Fleetwood.
The acts complained of in the instant case were not as egregious as those present in the cases cited in the defendants' Motion, in which the Courts found that the defendants' conduct did not rise to the threshold necessary to overcome workers' compensation immunity. Nevertheless, the Court finds that the occurrence of the subject incident was inevitable, given the violations alleged by plaintiff (which are disputed by defendant but, which must be accepted as true on a Motion for Summary Judgment).
The Court finds that Oliver committed intentional acts ... or that were substantially certain to result in injury or death to [Dennis] Reeves.
(Citation omitted.)
Fleetwood, Oliver, and Miller filed a timely appeal seeking review of the nonfinal order denying their motion for summary judgment. See Fleetwood Homes, 833 So.2d at 862. Initially, the Second *817 District analyzed whether it had jurisdiction to review the nonfinal order of the trial court. The appellate court recognized that Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v) grants a district court jurisdiction to review a nonfinal order that determines, as a matter of law, that a party is not entitled to workers' compensation immunity. See id. Further, the Second District cited this Court's decision in Hastings v. Demming, 694 So.2d 718 (Fla.1997), noting that there, this Court held, "Nonfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party." Fleetwood Homes, 833 So.2d at 863 (quoting Hastings, 694 So.2d at 720). However, the court explained that its "jurisdictional dilemma is predicated on the fact that workers' compensation immunity is not usually a defense at trial." Id.
The lower court detailed the legal framework applied in an action in which a plaintiff seeks damages in tort and attempts to prove the type of claim that avoids the exclusive liability restrictions of the Workers' Compensation Act. The district court explained that an employee may sue an employer for an intentional tort, may sue a supervisor whose conduct rises to the level of culpable negligence, or sue a coemployee whose conduct rises to the level of gross negligence or willful and wanton conduct. See id. at 864 (citing § 440.11, Fla. Stat. (Supp.1990)). In such cases, the court stated, the defendant does not argue a workers' compensation immunity defense, but instead argues that he is not liable under the particular standard of care asserted by the plaintiff. See id. The court then stated:
As a result of this legal framework, if a trial court decides to deny an employer's or a fellow employee's motion for summary judgment, the court will rarely state that it is deciding an issue "as a matter of law." Instead, the trial judge will usually conclude that a disputed issue of fact exists as to whether the employer or the fellow employee was liable under the applicable lower standard of care. For example, the truth may be that the trial court in this case actually decided that Fleetwood and its employees were entitled to workers' compensation immunity, but that immunity did not prevent this suit from going to trial on allegations of gross negligence or intentional tort. If the supreme court intends to prohibit appellate review of orders denying summary judgment in all cases where the trial court intends to allow the plaintiff to proceed to trial on an intentional tort or a claim of gross negligence or culpable negligence, then it might be simpler to eliminate rule 9.130(a)(3)(C)(v) because the rule would then have virtually no application to any order that a defendant would wish to appeal. [N.4]
[N.4] Under this interpretation, this jurisdictional rule would allow review only in the very rare case where the trial court determined, as a matter of law, that the undisputed facts established that the defendant was not the statutory employer or a coworker. So interpreted, the rule would allow for appeal only when the trial court was planning to proceed to trial on the issue of the defendant's simple negligence because the trial court had rejected, as a matter of law, the claim that the defendant was an employer or fellow employee.
Id.
Explaining that the legislative intent behind the Workers' Compensation Act was to provide employers and coemployees *818 with immunity from suit except in extraordinary situations, the Second District determined that "[i]f the appellate courts are to monitor compliance with these legislative policies, the review must take place at the time the nonfinal order is entered, and not after lengthy and expensive litigation." Id. at 865. Based upon its analysis, the lower court concluded that it did have jurisdiction to review the order of the trial court. The Second District noted:
We are convinced the supreme court understands these policy distinctions and intends for the district courts to have jurisdiction to review cases similar to this case. In this case, there are undoubtedly factual questions in dispute. However, because the standards of care applicable to gross negligence, culpable negligence, and intentional tort are very limited, the disputed facts in this case do not actually create disputes concerning the material issues. In other words, the facts in the light most favorable to the plaintiff are so "crystallized" that a court can determine, as a matter of law, that these facts do not rise to the heights of gross negligence, culpable negligence, or intentional tort. See Hastings, 694 So.2d at 719. Thus, rule 9.130(a)(3)(C)(v) should restrict us from examining cases where the record is not factually well-developed on the issue of workers' compensation immunity, but it should not prevent us from enforcing the legislative policy of immunity when we can review a well-developed record to conclude that the plaintiff cannot present prima facie evidence to establish the exceptional case of gross negligence, culpable negligence, or intentional tort in this context.
Id. However, because the Second District was not entirely satisfied that it did, in fact, have jurisdiction in the instant matter, the court certified the following question as a question of great public importance: "May a district court review a nonfinal order denying, `as a matter of law,' a motion for summary judgment on the issue of workers' compensation immunity if it is clear that the trial court intends to submit the issue of gross negligence or intentional tort to the jury as a question of fact?" Id. at 869.
Although the district court determined that it did have jurisdiction pursuant to rule 9.130(a)(3)(C)(v), the Second District additionally concluded that even if the court was without jurisdiction to review the trial court's order pursuant to the rule, it could properly review the order under its certiorari jurisdiction. See id. at 865. The court explained that the trial court had departed from the essential requirements of the law by applying the concept of an inevitable accident as a method of establishing gross negligence and an intentional tort. See id. The district court concluded that the trial court's departure from the essential requirements of the law deprived the respondents of a statutory right to immunity from suit, and the legal error could not be adequately remedied on direct appeal. See id.[2]

DISCUSSION
Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v) provides: "Appeals to the district courts of appeal of non-final orders *819 are limited to those that ... determine... that, as a matter of law, a party is not entitled to workers' compensation immunity." Fla. R.App. P. 9.130(a)(3)(C)(v). This Court added this provision to rule 9.130 in 1992 in the decision of Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla.1992). There, we answered the following certified question in the negative: "May trial court orders, denying immunity from civil suit under the worker's compensation statute, be reviewed by a writ of prohibition?" Id. at 851. However, because we were "sensitive to the concern for an early resolution of controlling issues," we ordered that the amendment to rule 9.130 be added and become effective immediately. Id. at 854-55.
The original version of the amendment read: "Review of non-final orders of lower tribunals is limited to those which ... determine... that a party is not entitled to workers' compensation immunity as a matter of law." Id. In 1996, the section was amended by moving the phrase "as a matter of law" from the end of the provision to the beginning.[3] As explained in the committee notes, this amendment was made to clarify "that this subdivision was not intended to grant a right of nonfinal review if the lower tribunal denies a motion for summary judgment based on the existence of a material fact dispute." Fla. R.App. P. 9.130 (Committee Notes, 1996 Amendment). The amendment occurred due to a number of decisions from the district courts of appeal that had broadly interpreted the rule and had allowed review of nonfinal orders denying summary judgment when the denial was the result of the existence of disputed facts. See, e.g., City of Lake Mary v. Franklin, 668 So.2d 712, 714 (Fla. 5th DCA 1996); Breakers Palm Beach, Inc. v. Gloger, 646 So.2d 237, 237-38 (Fla. 4th DCA 1994).
We have held that "[t]he thrust of rule 9.130 is to restrict the number of appealable nonfinal orders." Travelers Ins. Co. v. Bruns, 443 So.2d 959, 961 (Fla.1984). "The theory underlying the more restrictive rule is that appellate review of nonfinal judgments serves to waste court resources and needlessly delays final judgment." Id. While we expressed this rationale prior to the inclusion in rule 9.130 of the workers' compensation provision at issue in the instant matter, the rationale is also applicable here. In Ramos v. Univision Holdings, Inc., 655 So.2d 89 (Fla.1995), we instructed:
A district court is generally without jurisdiction to review a nonfinal order denying a motion for summary judgment. In Mandico ... we provided a limited exception to that rule by amending Florida Rule of Appellate Procedure 9.130. The rule was intended to promote early resolution of cases in which it is evident that the plaintiff's exclusive remedy is workers' compensation.
Id. at 91 (citation and footnote omitted) (emphasis supplied). As our precedent makes clear, we intend that the district courts of appeal will have jurisdiction to review nonfinal orders denying summary judgment in workers' compensation cases in only a small number of matters, and that rule 9.130(a)(3)(C)(v) will be interpreted narrowly.
The leading precedent from this Court interpreting rule 9.130(a)(3)(C)(v) is Hastings v. Demming, 694 So.2d 718 (Fla. *820 1997). There, we addressed the following certified question:
Does an appellate court have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi) to review a nonfinal order denying a motion for summary judgment asserting workers' compensation immunity when the order does not conclusively and finally determine a party's nonentitlement to such immunity, as a matter of law, because of the existence of disputed material facts, so that the effect of the order is to leave for a jury's determination the issue of whether the plaintiff's exclusive remedy is workers' compensation benefits?
Id. at 718. In Hastings, we held that the 1996 amendment to the rule, moving the phrase "as a matter of law" from the end of the provision to the beginning, "makes clear that the answer to the certified question must be no." Id. We further directed:
We changed the phrasing of the subject rule in order to settle the inconsistency between the district courts. Nonfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party. In those limited cases, the party is precluded from having a jury decide whether a plaintiff's remedy is limited to workers' compensation benefits and, therefore, an appeal is proper. Otherwise, the denial of the summary judgment may be based on a factual dispute and the party is still likely able to present an immunity defense to the jury. In those cases, the new rule makes clear that the district courts have no jurisdiction to hear an appeal of the nonfinal order.
Id. at 720.
In Florida Department of Corrections v. Culver, 716 So.2d 768 (Fla.1998), we clarified our decision in Hastings by addressing the following certified question: "In determining the appealability of a nonfinal order denying a motion for summary judgment based on workers' compensation immunity, are we restricted to looking only at the order on appeal or may we review the record in the manner described in Hastings v. Demming, 682 So.2d 1107 (Fla. 2d DCA 1996)." Id. at 768. There, the circuit court's order denied summary judgment without elaboration, but a review of the record by the district court revealed no disputed issues of material fact. See id. Despite the district court's findings, the court determined that it did not have jurisdiction to review the order on appeal in light of this Court's decision in Hastings, and certified the question of great public importance. See id. We held that the answer to the certified question could be found in our opinion in Hastings:
[Hastings] ... clearly provides that "[n]onfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party." Because the order in the instant case does not specifically state that workers' compensation immunity is unavailable as a defense, consistent with our decision in Hastings, the district court does not have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi) to review the order.
Id. at 768-69 (quoting Hastings, 694 So.2d at 720). Accordingly, this Court approved the decision of the district court. See also Pizza Hut of Am., Inc. v. Miller, 696 So.2d 340, 341 (Fla.1997) (holding no jurisdiction where trial court's order specifically stated there were factual questions on the issue of workers' compensation immunity and did not determine nonentitlement to workers' *821 compensation immunity as a matter of law); H.C. Hodges Cash & Carry, Inc. v. Walton Dodge Chrysler-Plymouth Jeep & Eagle, 696 So.2d 762, 763 (Fla.1997) (holding no jurisdiction where order denying summary judgment did not contain findings of fact and did not conclusively establish an entitlement to workers' compensation immunity).
The lower courts of Florida have strictly adhered to this Court's decisions in Hastings and Culver, determining that a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order explicitly states that the defendant will not be entitled to present a workers' compensation immunity defense at trial. See, e.g., S. Pan Servs. Co. v. Rodriguez, 771 So.2d 612, 612 (Fla. 3d DCA 2000) (dismissing appeal from nonfinal order because bare bones order of denial of motion for summary judgment on the ground of workers' compensation immunity is not subject to review under rule 9.130(a)(3)(C)(vi)); Better Roads, Inc. v. Gonzalez, 744 So.2d 1123, 1123 (Fla. 2d DCA 1999) (holding no jurisdiction where order simply denied summary judgment without stating reason); Martin Elecs., Inc. v. Glombowski, 705 So.2d 26, 30 (Fla. 1st DCA 1997) (holding no jurisdiction where order denying motion to dismiss did not contain the specific language required by Hastings); Rinker Materials Corp. v. Holmes, 697 So.2d 558, 559 (Fla. 4th DCA 1997) (holding no jurisdiction where trial court, on remand, explained that the motion for summary judgment had been denied because there were genuine issues of material fact).
In the instant case, the circuit court's order denying summary judgment did not explicitly state that the respondents would not be entitled to rely upon a workers' compensation immunity defense at trial. The order is a simple denial of summary judgment, and not an order entering judgment against the defendant on the issue of workers' compensation immunity. The order demonstrated the necessary steps to evaluate the motion the respondents filed, which was to review pleadings and facts in a light most favorable to the claimant, but did not adjudicate those facts in favor of the petitioner and, importantly, specifically recognized that the respondents disputed those facts.
Recognizing that the respondents  the parties moving for summary judgment  carried the burden to demonstrate that they were entitled to judgment as a matter of law, the circuit court simply concluded that the respondents had not satisfied that burden, and thus utilized the phrase "as a matter of law" in the factual section of the order. The adjudication section of the order is clearly a simple denial of the motion for summary judgment. There is no determination, on the face of the order, that the respondents are precluded and prohibited, as a matter of law, from asserting the application of workers' compensation immunity from liability at the time of trial. Under our current law and rules, interlocutory appeals of a simple denial of a motion for summary judgment in this context are not authorized. See Culver, 716 So.2d at 768-69; Hastings, 694 So.2d at 720; Fla. R.App. P. 9.130(a)(3)(C)(v). Thus, we answer the first certified question in the negative  a district court of appeal may not review a nonfinal order of the circuit court where issues pertaining to the defendant's level of negligence remain  and reiterate our well-established rule that "[n]onfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter *822 of law, such a defense is not available to a party." Hastings, 694 So.2d at 720.
Additionally, the district court erred in determining that even if that court lacked jurisdiction pursuant to rule 9.130(a)(3)(C)(v) to review the nonfinal order, it could review the order under its certiorari jurisdiction. Florida Rule of Appellate Procedure 9.030(b)(2)(A) provides: "The certiorari jurisdiction of district courts of appeal may be sought to review non-final orders of lower tribunals other than as prescribed by rule 9.130...." Fla. R.App. P. 9.030(b)(2)(A). This Court has held that "common law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla.1987); see also Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000); Jaye v. Royal Saxon, Inc., 720 So.2d 214, 214-15 (Fla.1998). Further, we have written: "A non-final order for which no appeal is provided by Rule 9.130 is reviewable by petition for certiorari only in limited circumstances." Martin-Johnson, Inc., 509 So.2d at 1099; see also Brooks v. Owens, 97 So.2d 693, 695 (Fla.1957) ("This court will review an interlocutory order in law only under exceptional circumstances."). Limited certiorari review is based upon the rationale that "piecemeal review of nonfinal trial court orders will impede the orderly administration of justice and serve only to delay and harass." Jaye, 720 So.2d at 215. As the appellate rules committee commented on the interaction of rules 9.030 and 9.130:
The advisory committee was aware that the common law writ of certiorari is available at any time and did not intend to abolish that writ. However, because that writ provides a remedy only if the petitioner meets the heavy burden of showing that a clear departure from the essential requirements of law has resulted in otherwise irreparable harm, it is extremely rare that erroneous interlocutory rulings can be corrected by resort to common law certiorari. It is anticipated that because the most urgent interlocutory orders are appealable under this rule, there will be very few cases in which common law certiorari will provide relief.
Fla. R.App. P. 9.130 (Committee Notes, 1977 Amendment).
It is well settled that to obtain a writ of certiorari, there must exist "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002); see also Brooks, 97 So.2d at 695. The district court improperly held that these three requirements were satisfied in the instant action. The simple denial of summary judgment did not depart from the essential requirements of the law, as it merely denied the respondents' motion and recognized that the respondents had failed to satisfy their burden of demonstrating that they were entitled to judgment as a matter of law. Further, any error by the circuit court can be adequately remedied on appeal, should the circuit court ultimately determine that the respondents do not enjoy immunity from liability for their actions. Therefore, the Second District improperly held that its certiorari jurisdiction could be applied here.
Having determined that the district court of appeal did not have jurisdiction to review the nonfinal order of the circuit court denying the respondents' motion for summary judgment, we answer the first certified question in the negative, decline to address the second certified question, *823 quash the decision of the Second District, and remand for further proceedings consistent with this decision.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs specially with an opinion, in which CANTERO and BELL, JJ., concur.
WELLS, J., concurring specially.
I concur because I conclude that the majority's decision is compelled by this Court's precedent in Hastings v. Demming, 694 So.2d 718 (Fla.1997), and Florida Department of Corrections v. Culver, 716 So.2d 768 (Fla.1998).
However, I write to state that I find the logic of Judge Altenbernd's opinion for the Second District to raise important issues which need to be confronted. In order to give effect to the legislatively mandated workers' compensation immunity, the legal existence and applicability of that immunity in individual cases should be able to be tested pretrial in appellate review. Such a procedure is necessary to prevent workers' compensation immunity from being seriously depreciated and this integral part of the workers' compensation system rendered worthless by reason of the expense and exposure of a jury trial. Our decision in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), explains the quid pro quo out of which this immunity came into existence but also has heightened the need for pretrial review by broadening what can be pled as employee conduct that is not covered by workers' compensation immunity.
In order to provide a procedure, I believe that Florida Rule of Appellate Procedure 9.130(a)(3) should again be amended so that the rule is in its originally adopted form. I agree that the rule, as originally adopted, would then be construed as it was by Judge Klein in Breakers Palm Beach, Inc. v. Gloger, 646 So.2d 237 (Fla. 4th DCA 1994), following Judge Altenbernd's earlier opinion in Ross v. Baker, 632 So.2d 224 (Fla. 2d DCA 1994).
CANTERO and BELL, JJ., concur.
NOTES
[1] Counts one through three of the amended complaint were dismissed prior to the respondents' appeal to the Second District. See Fleetwood Homes, 833 So.2d at 861.
[2] As noted above, we decline to answer the second question certified by the district court, as we hold that the appellate court did not have jurisdiction to review the nonfinal order of the circuit court. Therefore, we find it unnecessary to detail the extensive discussion by the Second District regarding the circuit court's denial of summary judgment on behalf of Fleetwood that resulted in that court certifying the second question of great public importance.
[3] Additionally, the rule was originally numbered as subdivision (a)(3)(C)(vi), but was renumbered, without alteration to the language of the rule itself, as subdivision (a)(3)(C)(v) in 2000 as a result of the deletion of subdivision (a)(3)(C)(iv). See Fla. R.App. P. 9.130 (Committee Notes, 2000 Amendment).