903 So.2d 259 (2005)
TAMPA MEDICAL ASSOCIATES, INC., d/b/a Mariner Health of Tampa, Petitioner,
v.
The ESTATE OF Hilda Claramunt TORRES, by and through Rebecca BANK and Sharon Dutra, as co-Personal Representatives, Respondent.
No. 2D04-4725.
District Court of Appeal of Florida, Second District.
May 25, 2005.
*260 Daniel E. Dias of Romaguera, Baker, Dawson, Bringardener & Dias, P.A., Palm Beach Gardens, for Petitioner.
Suzanne M. Pileggi, Edward J. Lyons, and Leonard Milcowitz of Milcowitz & Lyons, P.A., Clearwater, for Respondent.
FULMER, Judge.
Tampa Medical Associates, Inc., d/b/a Mariner Health of Tampa (Mariner) seeks certiorari review of the trial court's order, which requires it to deliver certain incident reports to counsel for the Estate of Hilda Claramunt Torres (Estate). Mariner is the defendant in a pending civil action concerning injuries sustained by the decedent while she was a resident in Mariner's long-term care facility. We grant the petition and quash the trial court's order.
In the underlying litigation, the Estate requested production of "all reports of accidents/falls of any resident, visitor or employee for the years 2000-2001 at [Mariner]." Mariner objected on the grounds that the request was too broad and the incident reports were work product and were protected by various statutes from discovery. The trial court ruled that the Estate's request was too broad, but instead of denying it, the trial court limited the scope and ordered an in camera inspection of "all incident reports regarding falls within the common areas to which residents had access inside the [Mariner facility], for the six month period prior to and for six months [sic] period following, Hilda Torres' residency at [Mariner]" with patient names redacted.
After conducting the in camera inspection, the trial court held a telephonic hearing that was not recorded. Both parties represent that during the hearing the trial court announced its findings based on the in camera inspection and ordered production of specific incident reports. Thereafter, the trial court entered its written order, which is the subject of this certiorari proceeding. In its order, the trial court determined that certain enumerated reports were discoverable and that the Estate had made a specific showing of need and inability to obtain equivalent information, without undue hardship, which entitled *261 it to obtain copies of the incident reports. Therefore, the trial court directed delivery of the reports to the Estate's counsel.
In its petition for certiorari, Mariner first argues that the incident reports are protected from discovery by statute, specifically sections 400.118(2)(c) and 400.119(1), Florida Statutes (2003), and therefore, the trial court departed from the essential requirements of the law in determining that the reports were discoverable. Mariner next argues that if the incident reports are subject to discovery under section 400.147(4), Florida Statutes (2003), the trial court departed from the essential requirements of law in determining that the Estate made a sufficient showing of need and inability to obtain equivalent information without undue hardship as required by Florida Rule of Civil Procedure 1.280(b)(3).
The statutes upon which Mariner relies are part of the provisions of chapter 400[1] that govern nursing homes and provide for the establishment and enforcement of basic standards for the treatment of nursing home residents as well as the maintenance and operation of nursing facilities. Section 400.147(1) requires every facility to establish an internal risk management and quality assurance program which must include an incident reporting system. "The incident reports are part of the workpapers of the attorney defending the licensed facility in litigation relating to the licensed facility and are subject to discovery, but are not admissible as evidence in court." § 400.147(4).
Section 400.118 requires the Agency for Health Care Administration to establish a quality assurance system to detect unsafe conditions in nursing facilities through the use of "quality-of-care monitors," who conduct unannounced monitoring visits and, essentially, function as state inspectors. §§ 400.021(2), 400.118(2)(a). Findings of the monitoring visits are reported to appropriate supervisory personnel and other responsible agencies. § 400.118(2)(b). Subsection 400.118(2)(c) provides, in pertinent part:
Any record, whether written or oral, or any written or oral communication generated pursuant to [quality-of-care monitoring] shall not be subject to discovery or introduction into evidence in any civil or administrative action against a nursing facility arising out of matters which are the subject of quality-of-care monitoring. . . . However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil or administrative action merely because they were presented during monitoring visits or evaluations. . . . The exclusion from the discovery or introduction of evidence in any civil or administrative action provided for herein shall not apply when the quality-of-care monitor makes a report to the appropriate authorities regarding a threat to the health or safety of a resident.
(Emphasis added).
Thus, when read together, sections 400.118 and 400.147 preclude the discovery of written or oral reports or communications made by quality-of-care monitors in the scope of their duties, with the exception of reports regarding a threat to a resident's health or safety. However, incident reports that are reviewed by quality-of-care monitors but were prepared by employees of the facilities pursuant to section 400.147 are not protected from discovery because these *262 are records "otherwise available from original sources," that is, the facility at which the report was generated.
When, as in this case, litigants dispute the precise nature of incident reports and the statutory provisions under which they may be protected, the proper course is for the trial court to conduct an in camera inspection to determine if the requested reports are discoverable. See 1620 Health Partners, L.C. v. Fluitt, 830 So.2d 935, 938 (Fla. 4th DCA 2002) (holding that when the parties do not agree upon, nor does the record clearly indicate, the precise nature of the incident reports, an in camera inspection is necessary to review the documents requested to determine whether they are discoverable.) In this case, the trial court conducted an in camera inspection and determined that certain incident reports were discoverable. We conclude that Mariner has not shown that the trial court departed from the essential requirements of law in making this determination.
In reaching our conclusion, not only have we rejected Mariner's argument that the reports are protected from discovery by section 400.118, as previously discussed, we also reject Mariner's argument that the reports are protected from discovery by section 400.119. Section 400.119(1) provides for the confidentiality of the records and meetings of risk management and quality assurance committees as well as certain incident reports. In pertinent part, it states:
Records of meetings of the risk management and quality assurance committee of a long-term care facility . . . as well as incident reports filed with the facility's risk manager and administrator, notifications of the occurrence of an adverse incident, and adverse incident reports from the facility are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution.
Citing to this provision, Mariner asserts that because the incident reports in this case were filed with Mariner's risk management personnel for consideration at quality assurance/risk management meetings and are part of the records of those meetings, they are not discoverable. Mariner also relies on Fluitt to support this argument. Mariner's reliance on section 400.119 is misplaced. The protection afforded by section 400.119(1) addresses the public's right of access to the documents as otherwise provided by section 119.07(1) and Article I, section 24(a) of the Florida Constitution. The protection does not extend to or even address discovery privileges and, thus, does not preclude discovery of the incident reports as asserted by Mariner. We recognize that Fluitt appears to apply section 400.119 as a discovery privilege that could exempt incident reports "[i]f they are records from quality assurance/risk management meetings or communications regarding the like." However, Fluitt does not contain any analysis of section 400.119. As we have already explained, we do not agree that section 400.119 provides a discovery privilege.
Our conclusion that the trial court did not depart from the essential requirements of law in determining that certain incident reports were subject to discovery does not end our analysis. Because these incident reports are discoverable as attorney work product, a specific showing of need and inability to obtain without undue hardship is required. See Fla. R. Civ. P. 1.280(b)(3); Fluitt, 830 So.2d at 938 (concluding that section 400.147(4) should be interpreted consistent with case law interpreting almost identical provision for hospitals in section 395.0197(4) and, therefore, reports described in section 400.147(4) are not discoverable absent a showing of need *263 and inability without undue hardship to obtain a substantial equivalent from other sources). Thus, once a trial court determines that incident reports are subject to discovery, the court must next determine if the party seeking production of the reports has made the showing required by rule 1.280(b)(3).
In its order, the trial court stated that "[t]he Plaintiff [Estate] has made a specific showing of need and inability to obtain equivalent information, without undue hardship." However, the trial court made no factual findings to indicate how the Estate made a showing of need and undue hardship, and the conclusion appears to have no evidentiary foundation. The Estate argues that without a transcript of the telephonic hearing, this court must assume that it made the showing necessary to entitle it to obtain the disputed documents. Ordinarily, we would agree. See Scotty's, Inc. v. Olivieri, 713 So.2d 1020, 1021 (Fla. 5th DCA 1998) ("Absent a transcript, we must assume that either no proper objection was made by Scotty's or that a sufficient showing of need and undue hardship was made."). However, the circumstances in this case are more akin to those in D'Amato v. D'Amato, 848 So.2d 462 (Fla. 4th DCA 2003), in which the absence of a hearing transcript did not preclude relief.
In D'Amato, the father challenged an order entered at an unrecorded hearing. The mother argued that the order should be affirmed because "without a transcript we do not know what evidence might have been adduced or whether the father consented to the court's action or instead failed to object to it." Id. at 464. The appellate court rejected the mother's position and concluded that:
the mother's attempt to place the burden on the father to show in a transcript the absence of consent, or that he objected, is not well taken. Because neither the trial judge nor the mother contends that any evidence was actually adduced, or that the father did in fact consent to a consideration of the matter, or even that he failed to object thereto, we see no necessity for a transcript to resolve whether he might have done something that no one suggests he actually did.
Likewise, in this case we are not persuaded by the Estate's argument regarding the lack of a transcript because it appears to be undisputed that no evidence or testimony was presented at the telephonic hearing. And, the remainder of the record is devoid of any evidence to support the trial court's conclusion that the Estate "has made a specific showing of need and inability to obtain equivalent information, without undue hardship."
Because argument of counsel is insufficient to prove need and undue hardship, we conclude that the trial court departed from the essential requirements of law by ordering Mariner to deliver the incident reports to the Estate without requiring the Estate to make an evidentiary showing of need and undue hardship. See CSX Transp., Inc. v. Carpenter, 725 So.2d 434, 435 (Fla. 2d DCA 1999) (holding that assertions of counsel do not fulfill the requirement of showing need and undue hardship); Metric Eng'g v. Small, 861 So.2d 1248, 1250 (Fla. 1st DCA 2003) (holding that counsel's bare assertions, unsupported by any evidence, are inadequate to show the need and undue hardship that is required for production of work product documents).
Accordingly, we grant the petition for certiorari, quash the trial court's order and remand for the trial court to conduct an evidentiary hearing to determine whether the Estate can make the requisite showing of need and undue hardship. See Fla. E. *264 Coast Ry., L.L.C. v. Jones, 847 So.2d 1118, 1119 (Fla. 1st DCA 2003) (holding that counsel's assertions alone cannot justify disclosure of work product, quashing the order on the motion to compel and directing the trial court to conduct an evidentiary hearing to determine whether the respondent could make the requisite showing of need and undue hardship).
Petition granted.
ALTENBERND, C.J., and WHATLEY, J., Concur.
NOTES
[1] §§ 400.011-400.334, Fla. Stat. (2003).