974 So.2d 462 (2008)
ROYAL CARIBBEAN CRUISES, LTD., Petitioner,
v.
Byron COX, Respondent.
No. 3D07-1515.
District Court of Appeal of Florida, Third District.
January 23, 2008.
*463 Rodriguez, Aronson & Essington and Domingo C. Rodriguez and Patricia Leigh McMillan Minoux, for petitioner.
Russo Appellate Firm and Elizabeth K. Russo and Craig Lee Montz; Luis A. Perez; and William F. Fabra, Miami, for respondent.
Before GREEN, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, Judge.
The defendant/petitioner, Royal Caribbean Cruises, Ltd. ("RCCL"), seeks a writ of certiorari to review the trial court's non-final order denying its Motion to Compel a Supplemental Compulsory Physical Examination of the plaintiff/respondent, Byron Cox ("Cox"), by Dr. John Wilkerson. We grant the petition for writ of certiorari and quash the trial court's order.
In August 2004, Cox, a foreign seaman, filed an action seeking damages for Jones *464 Act negligence, unseaworthiness, failure to treat, maintenance and cure, and unearned wages, stemming from injuries he allegedly sustained while onboard an RCCL vessel on January 12, 2004. Following his alleged injuries, Cox was treated for lower back pain by RCCL's physicians who then referred Cox to Dr. Jorge Ibars, a Board Certified Neurosurgeon. Dr. Ibars found that Cox had a disc protrusion at L3-L4, but did not recommend surgery; that Cox was at maximum medical improvement ("MMI"); and that Cox had a five percent impairment rating.
Shortly thereafter, Cox was seen by Dr. Richard Rozencwaig, a physician chosen by Cox, for lower back pain and shoulder pain. After treating Cox for several months, Dr. Rozencwaig referred Cox to Dr. Rolando Garcia, an orthopedic surgeon. Dr. Garcia performed back surgery on Cox. In May 2005, Dr. Rozencwaig performed arthroscopic surgery on Cox's left shoulder. Following this first procedure, on September 7, 2006, RCCL had an orthopedic independent medical examination ("IME") performed on Cox by Dr. Anthony Dorto.
On October 5, 2006, during a deposition, Dr. Rozencwaig testified that Cox needed a second operation on his left shoulder. Based on Dr. Rozencwaig's testimony, RCCL moved to continue the trial, arguing that Cox was not at MMI, and therefore, he was not ready to proceed to trial. Cox then requested that RCCL reinstate his maintenance and cure benefits. On October 12, 2006, the trial court granted RCCL's motion to continue the trial.
RCCL then moved to compel a supplemental IME of Cox's left shoulder by its orthopedic expert, Dr. Wilkerson. Cox objected, stating that he did not want to have the second operation on his left shoulder, and Cox withdrew his request for reinstatement of maintenance and cure benefits. The trial court granted RCCL's motion, and on' November 11, 2006, Dr. Wilkerson conducted an IME of Cox. Following this IME, Dr. Wilkerson agreed that Cox needed a second surgery, but he disagreed with Dr. Rozencwaig's suggested procedure, and concluded that a more extensive procedure was indicated.
Trial was scheduled for Monday, November 27, 2006, and on Friday, November 24, 2006, Cox reinstated his demand for maintenance and cure benefits, and requested that the second operation be performed as soon as possible after the trial. In response to Cox's demand, at the commencement of trial on November 27, RCCL moved to preclude Cox's claim for maintenance and cure, or alternatively, to continue the trial. The trial court granted RCCL's motion to continue, and reset the trial for April 30, 2007.
On March 15, 2007, Dr. Rozencwaig performed the second operation on Cox's shoulder. Thereafter, RCCL moved for another continuance, arguing that Cox was not at MMI. At the hearing on this motion to continue, Cox explained that he would be in this country on medical parole until June 23, 2007, and the trial was reset for the third week of June.
RCCL then filed its motion to compel a second IME with Dr. Wilkerson, arguing that RCCL would be severely prejudiced if Dr. Wilkerson was forced to testify at trial without being allowed to re-examine Cox after his second shoulder operation. Cox objected, arguing that Dr. Wilkerson's IME of Cox prior to the second operation was sufficient, and that Florida Rule of Civil Procedure 1.360 does not allow multiple examinations for the same injury. The trial court denied RCCL's motion for supplemental examination, but directed Cox to provide RCCL with all "additional medical reports, and radiology films (x-ray, MRI, CT scan, etc.) as soon as available." *465 The trial court denied RCCL's subsequent motion for rehearing, and this petition followed.
Ordinarily, orders denying discovery are not reviewable by certiorari because the harm from such orders can generally be rectified on appeal. Ruiz v. Steiner, 599 So.2d 196, 197 (Fla. 3d DCA 1992). However, certiorari review has been granted where discovery orders cause irreparable injury to the petitioner. Id. Issuing a writ of certiorari in the instant case is necessary because the order under review is: "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004).

Departure From the Essential Requirements of the Law
Florida Rule of Civil Procedure 1.360(a) allows one party to conduct physical examinations of another where a two-part test is satisfied. The first part provides: "A party may request any other party to submit to, or to produce a person in that other party's custody or legal control for, examination by a qualified expert when the condition that is the subject of the requested examination is in controversy." Fla. R. Civ. P. 1.360(a)(1) (emphasis added). The second requirement is that "the party submitting the request has good cause for the examination." Fla. R. Civ. P. 1.360(a)(2) (emphasis added). Additionally, contrary to Cox's argument to the trial court, the language of Florida Rule of Civil Procedure 1.360(a) does not limit the party requesting an IME to a single examination of the other party.
RCCL argues that the trial court's order departed from the essential requirements of the law because the nature of Cox's claims against RCCL placed Cox's physical condition in controversy, and that Cox's second shoulder operation caused a substantial change in that physical condition, thereby giving RCCL good cause to request another IME with Dr. Wilkerson. We agree.
The "in controversy" requirement of Florida Rule of Civil Procedure 1.360(a)(1) is clearly satisfied in this case. Cox's claims against RCCL arise out of alleged injuries he sustained onboard an RCCL vessel on January 12, 2004, and Cox asserts that these injuries are continuing in nature. In addition, one of the central issues in this case is whether Cox has reached MMI, or is owed maintenance and cure benefits. At trial, Cox will argue as to the nature and extent of his alleged injuries, and base his claim for damages upon his past, current, and future physical conditions. Cox's physical condition after the second shoulder operation, therefore, is clearly "in controversy" in the instant case.
Before being authorized to conduct another IME of Cox by Dr. Wilkerson, RCCL also had the burden of showing good cause for the examination. Fla. R. Civ. P. 1.360(a)(2). In a negligence action where a plaintiff asserts that he or she has sustained mental or physical injuries, the defendant's good cause for conducting an initial IME is normally shown without any further inquiry. Fla. Emergency Physicians-Kang & Assocs., M.D., P.A. v. Parker, 800 Sa.2d 631, 634 (Fla. 5th DCA 2001). However, when a defendant requests a subsequent IME, the defendant should make a stronger showing of necessity before that request is authorized. Vopelak v. Williams, 12 Ohio Misc. 93, 42 *466 F.R.D. 387, 389 (1967).[1] We conclude that because Cox's physical condition underwent a substantial change after Dr. Wilkerson's first IME, RCCL has proven good cause for requesting and conducting another IME.
It is undisputed that on March 15, 2007, after Dr. Wilkerson's first IME of Cox, Dr. Rozencwaig performed a second operation on Cox's shoulder. Therefore, Cox's physical condition underwent substantial changes since he was first examined by Dr. Wilkerson, and thus, RCCL and its experts had good cause to request and conduct another IME in order to update their opinion of Cox's condition following the second invasive procedure performed on Cox's shoulder.
We cannot conclude that RCCL's request was overly burdensome, unnecessarily cumulative, or harassing to Cox in any way. In fact, Cox has failed to show that any harm would result from his submitting to another IME by Dr. Wilkerson, especially when the scope of the requested IME may be focused, in the trial court's discretion, to a limited determination of the effect of the second shoulder operation on Cox's condition. See Fla. R. Civ. P. 1.360(a)(3) (stating that the trial court may establish protective rules governing the scope of requested examinations).
Florida Rule of Civil Procedure 1.360(a) states that an IME is authorized when the examined party's condition is in controversy, and the requesting party has good cause to request the examination. Thus, the trial court's order departs from the essential requirements of the law because Cox's claims placed his physical condition in controversy (both before and after the second operation), and RCCL showed good cause for requesting and conducting the subsequent IME given the substantial change in Cox's condition.

Material Injury for the Remainder of the Case
This Court is without jurisdiction to grant RCCL's petition and issue the writ unless the trial court's order denying RCCL's request to conduct a supplemental IME of Cox by Dr. Wilkerson causes material harm to RCCL that will last for the remainder of the case. Reeves, 889 So.2d at 822. RCCL has proven the requisite injury in two ways. First, the trial court's order effectively prevents RCCL from arming itself with the information necessary to rebut the assertions that will be made by Cox and his experts at trial. Furthermore, the order allows Cox to continue to receive maintenance and cure benefits from RCCL unchecked, thereby depriving RCCL of its rights as a Jones Act employer.

a. The order leaves RCCL powerless to rebut assertions Cox will present at trial.
"Pre-trial discovery [in civil litigation] was implemented to simplify the issues in a case, to eliminate the element of surprise, to encourage the settlement of cases, to avoid costly litigation, and to achieve a balanced search for the truth to ensure a fair trial." Elkins v. Syken, 672 So.2d 517, 522 (Fla.1996) (emphasis added) (citing Dodson v. Persell, 390 So.2d 704 (Fla. 1980)). The trial court's order impermissibly chills RCCL's right of access to information *467 that the defense needs to fairly resolve the material issues in dispute, and unfairly obstructs the finder of fact in determining the truth.
Cox's experts unquestionably will examine Cox's condition before trial to present up-to-date testimony regarding his physical condition, his healing process, his future disabilities (if any), and his damages. The trial court's denial of RCCL's request to examine Cox and to evaluate the effectiveness of the surgery; Cox's present condition; and his future prognosis, leaves RCCL powerless to rebut any assertions made by Cox's experts at trial that are based on Cox's condition after the second shoulder operation on March 15, 2007. We fail to see the logic upon which RCCL should be denied the right to be equally prepared as Cox at trial. See Vopelak, 42 F.R.D. at 389.
The trial, court's denial of RCCL's request for a subsequent IME of Cox, therefore, deprives RCCL of the "balanced search for the truth" which our rules of pre-trial discovery seek to implement. Elkins, 672 So.2d at 522. Thus, RCCL is materially harmed by the trial court's order for the remainder of the case.

b. The order deprives RCCL of its rights as a Jones Act employer.
As a matter of general maritime law, Jones Act employers are required to provide maintenance and cure benefits to their employees who are injured within the course of their employment. See Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). Accompanying this duty, however, is the shipowner's right to monitor the seaman's treatment to determine when MMI is reached and maintenance and cure is no longer required. United States v. Martin, No. 00-CV-303, 2001 WL 122224, at *2 (E.D.Pa. Feb. 8, 2001). The trial court's order allows Cox to receive maintenance and cure benefits unchecked until impulse compels him to unilaterally declare MMI and proceed to trial. This ruling strips RCCL of its rights as a Jones Act employer to oversee Cox's treatment and recovery while continuing to impose RCCL's duty to pay maintenance and cure.
At oral argument, seven months after Cox's second shoulder operation, the parties revealed that the matter has not been set for trial and Cox continues to receive maintenance and cure from RCCL. The eventual determination of when Cox has reached MMI was left solely to Cox's doctors, giving them complete control over the scheduling of trial. RCCL's doctors have little, if any, influence upon the trial court to set the case for trial because RCCL has been precluded from re-examining Cox after the second operation and substantially hampered in determining Cox's present condition. The trial court's order precludes RCCL from arming itself with evidence that Cox has reached MMI, allows Cox to indefinitely collect maintenance and cure benefits at RCCL's expense, and forces RCCL to either provide these benefits or risk paying damages. The trial court's order, therefore, deprives RCCL of its rights as a Jones Act employer.

c. A review of Cox's records is insufficient.
We are not persuaded by Cox's argument that a review of his doctors' records, X-rays, CT scans, and the like will sufficiently update Dr. Wilkerson's opinion formed prior to the second operation. Where the requisite good cause exists to conduct an IME, a mere review of the opposing party's medical records is not a sufficient substitute for a firsthand, physical examination. See, e.g., Fla. Emergency Physicians-Kang & Assocs., 800 So.2d at 634 (holding that where a defendant had *468 good cause to request an initial IME, a review of the opposing party's medical or psychological records was not a sufficient substitute). When Dr. Wilkerson conducted his first IME of Cox in November 2006, he concluded that the procedure recommended by Cox's physician, Dr. Rozencwaig, was inadequate, and determined that a different procedure was indicated. Accordingly, it can be safely stated that an actual physical examination of Cox might yield substantially different results than a mere review of the records of a doctor with whom RCCL's expert has already disagreed.

The Injury Cannot be Corrected on Postjudgment Appeal
Finally, RCCL must demonstrate that the injury caused by the trial court's order, denying its request for a supplemental IME of Cox, cannot be remedied on appeal after a final order is entered. Reeves, 889 So.2d at 822. Certiorari is appropriate in the instant case because on appeal it will be impossible to determine exactly how the trial court's order affected both RCCL's defense and the final outcome of the case. A supplemental IME could reveal information which RCCL might employ at trial to refute, impeach, or contest the conclusions of Cox's experts who have examined Cox after his second shoulder operation. The effect of this information on the trier of fact could be trivial, but, on the other hand, it could be substantial. It will be impossible, however, to determine what effect the trial court's order had, on. RCCL's ability to defend, or on the final outcome of the case.
Furthermore, because the trial court's order prevents RCCL from determining whether Cox has reached MMI, RCCL must continue to pay maintenance and cure or stop paying these benefits at its own peril. The trial court's order creates the potential for fraud and prevents RCCL from protecting itself against fraud. Additionally, any maintenance and cure benefits paid by RCCL are not subsequently recoverable absent an independent action. Direct appeal, therefore, cannot adequately correct the injury to RCCL resulting from the trial court's order.

Conclusion
The trial court's order departs from the essential requirements of the law because Cox's physical condition (both before and after the second operation) was in controversy, and RCCL demonstrated good cause for the requested IME, due largely to the substantial change in Cox's condition after the first IME by Dr. Wilkerson. The trial court's order causes material injury to RCCL for the remainder of the case because the order prevents RCCL from pursuing its defense on equal footing with the plaintiff, Cox, and it deprives RCCL of its rights as a Jones Act employer. The extent and effect of this harm will be impossible to quantify or remedy on a later appeal, and accordingly, we grant the petition.
Petition for certiorari granted; order quashed.
SALTER, J., (concurs).
GREEN, J. (dissenting).
The majority opinion has written new law in the area of certiorari jurisprudence. It finds that the denial of an unsupported motion requesting a supplemental physical examination of a plaintiff, which could possibly cause the defense harm, is ripe for our certiorari review. I disagree with this extension of the law, and therefore, respectfully, dissent.
The writ of certiorari, particularly in civil cases, is reserved for those situations where an order results in material injury which cannot be corrected on appeal (i.e. *469 irreparable harm) and where the order departs from the essential requirements of the law. Sardinas v. Lagares, 805 So.2d 1024, 1025 (Fla. 3d DCA 2001). "Although common law certiorari is a discretionary writ, the question of irreparable harm and thus our jurisdiction is not discretionary." Bared & Co. v. McGuire, 670 So.2d 153, 156-57 (Fla. 4th DCA 1996). See Parkway Bank v. Ft. Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995) ("a petitioner must establish that an interlocutory order creates material harm irreparable by a post-judgment appeal before this court has power to determine whether the order departs from the essential requirement of the law."). "Mt, is generally held that certiorari may not be utilized to review orders which deny discovery because such orders, if in error, can be rectified upon plenary appeal." Indus. Tractor Co. v. Bartlett, 454 So.2d 1067 (Fla. 5th DCA 1984).
The majority opinion, however, purports to have found irreparable harm in this case because the trial court's order 1) prevents RCCL from defending itself at trial, maj. op. at 8; and 2) allows Cox to continue, perhaps fraudulently, to receive maintenance and cure benefits which RCCL would not be able to recover absent an independent action. Maj. op. at 12. Because I find proof of the majority's first ground to be completely lacking on the record before us, and the majority's second ground to be incorrect as a matter of law, I would dismiss this petition.
RCCL's motion to compel a "supplemental compulsory physical examination" was devoid of any supporting documentation from either counsel, its expert witness physicians, or its independent medical examiner. Rather, the motion merely contained counsel's conclusory argument that RCCL "will be severely prejudiced if their expert is forced to testify without being allowed to re-examine [Cox] subsequent to his recent surgery and establishment of an MMI declaration." Material injury cannot be found on such a bare bones allegation. See, e.g., Faerber v. D.G., 928 So.2d 517, 518 (Fla. 2d DCA 2006) (holding that representations of counsel did not amount to factual evidence); Tampa Med. Assocs., Inc. v. Estate of Torres, 903 So.2d 259, 263 (Fla. 2d DCA 2005) (finding that argument of counsel is "insufficient to prove need and undue hardship"); Steinhardt v. Inter-condominium Group, Inc., 771 So.2d 614 (Fla. 4th DCA 2000) (stating that facts in dispute must be proven absent stipulation and that representations of counsel are `insufficient).
Moreover, the mere fact that RCCL might overpay maintenance and cure benefits to Cox, which could require RCCL to bring independent action to recoup its losses is, as a matter of law, insufficient harm to permit certiorari review.[2]See Cuneo v. Conseco Servs., LLC, 899 So.2d 1139 (Fla. 3d DCA 2005) (mere expense and inconvenience does not constitute harm to permit certiorari review, even if the order departs from the essential requirements of law); Nat'l Sec. Fire & Cas. Co. v. Dunn, 751 So.2d 777 (Fla. 5th DCA 2000) (financial harm is generally insufficient harm to justify certiorari review). See also Bay N Gulf, Inc. v. Anchor Seafood, Inc., 971 So.2d 842 (Fla. 3d DCA 2007) (party does not suffer irreparable harm where it can be adequately compensated by money damages); Holiday Pines Prop. Owners *470 Assoc., Inc. v. Wetherington, 557 So.2d 243, 244 (Fla. 4th DCA 1990) (standard of "irreparable harm" not met where party could be compensated by money damages). Accordingly, I would dismiss the petition on jurisdictional grounds.[3]See Bared & Co. v. McGuire, 670 So.2d 153, 157 (Fla. 4th DCA 1996) (if petitioner fails to make a prima fade showing of irreparable harm in petition for certiorari review, District Court lacks jurisdiction to decide petition and petition should be dismissed).
NOTES
[1] "Because the Florida Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, federal decisions are highly persuasive in ascertaining the intent and operative effect of various provisions of the [Florida] rules." City of Jacksonville v. Rodriguez, 851 So.2d 280, 283 n. 3 (Fla. 1st DCA 2003) (quoting Wilson v. Clark, 414 So.2d 526, 531 (Fla. 1st DCA 1982)); see also Gordon v. Davis, 267 So.2d 874, 876 (Fla. 3d DCA 1972) (noting a lack of authority for departing from the construction of federal civil procedure rules when interpreting the Florida rules).
[2] "If a shipowner pays a seaman more than required for maintenance and cure, he may. recover the overpayment by means of a set-off against other damages, . . . or through a counterclaim." Brege v. Lakes Shipping Co., Inc., 225 F.R.D. 546, 548 (E.D.Mich.2004) (citing Huss v. King Co., Inc., 338 F.3d 647, 651-52 (6th Cir.2003) and Bergeria v. Marine Carriers, Inc., 341 F.Supp. 1153, 1154-56 (E.D.Pa.1972)).
[3] If RCCL is unable to obtain the information it requires in order to be afforded a fair trial, the dismissal should be "without prejudice to file an additional petition in this court, which establishes and demonstrates irreparable harm." Prasad v. Turner, 882 So.2d 490, 491 (Fla. 5th DCA 2004).