# Supreme Court of Florida

_____

No. SC2022-0068

_____

**UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, et al.,**
Petitioners,

vs.

**LAURIE CARMODY,**
Respondent.

July 6, 2023

COURIEL, J.

The Medical Malpractice Act[1] sets requirements that anyone contemplating a medical malpractice case must meet before filing suit in Florida. One of these presuit requirements is to select an expert witness who meets certain criteria and will corroborate the basis of the plaintiff's claim. In this case, the petitioners moved to dismiss a medical malpractice action against them, asserting that the respondent's proposed expert did not meet these statutory requirements. The trial court denied the motion.

_____

1. Chapter 766, Florida Statutes.

Is that trial court decision subject to certiorari review? That is, can an appellate court, exercising its authority[2] to issue an interlocutory writ of certiorari,[3] immediately review a trial court's ruling in this regard? No, said the First District Court of Appeal in *University of Florida Board of Trustees v. Carmody*, 331 So. 3d 236 (Fla. 1st DCA 2021), certifying conflict with *Clare v. Lynch*, 220 So. 3d 1258 (Fla. 2d DCA 2017), and *Riggenbach v. Rhodes*, 267 So. 3d 551 (Fla. 5th DCA 2019).[4] We agree with the First District that, while Florida courts "have recognized exceptions" to the general rule that "certiorari review is an inappropriate means of challenging a

---

2. *See* art. V, § 4(b)(3), Fla. Const. ("A district court of appeal or any judge thereof may issue writs of . . . certiorari . . . ."); Fla. R. App. P. 9.030(b)(2)(A) ("The certiorari jurisdiction of district courts of appeal may be sought to review [] nonfinal orders of lower tribunals other than as prescribed by rule 9.130 . . . .").

3. "[C]ertiorari relief is available when a lower court has departed from the essential requirements of the law or when a lower court has acted in excess of its jurisdiction, and no appeal or direct method of reviewing the proceeding exists." *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011). This version of certiorari relief should not be confused with its cousin, so-called "second-tier" certiorari, which allows district courts of appeal to review "final orders of circuit courts acting in their review capacity." Fla. R. App. P. 9.030(b)(2)(B).

4. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

trial court's denial of a motion to dismiss," this is not one of them. *Carmody*, 331 So. 3d at 237.

And yet we acknowledge that the Medical Malpractice Act changed the law such that an interlocutory remedy for parties facing claims that fail to satisfy its presuit requirements is warranted. Accordingly, in a concurrent opinion, we amend Florida Rule of Appellate Procedure 9.130(a)(3) to provide for interlocutory review of nonfinal orders that deny a motion to dismiss on the basis of the qualifications of a corroborating witness under subsections 766.102(5)-(9), Florida Statutes. *In re Amend. to Fla. Rule of App. Proc. 9.130*, No. SC2023-0701 (Fla. July 6, 2023).

## I

William Friedman, M.D.—a neurosurgeon—performed a cervical disc fusion on Laurie Carmody at Shands Teaching Hospital and Clinics, Inc. Carmody subsequently experienced worsening pain, hardness, and redness at the incision site, as well as neurological symptoms, all of which she reported to Dr. Friedman and Yolanda Gertsch-Lapcevic, A.R.N.P. When Carmody eventually became paralyzed, she sought treatment at an emergency room. The doctors there discovered that Carmody had

developed an abscess on her spine that would ultimately require two additional surgeries, neither of which would fully restore her health.

Carmody decided to sue Shands and the University of Florida Board of Trustees (UF) for medical malpractice allegedly committed by Dr. Friedman and Nurse Practitioner Gertsch-Lapcevic. But first, Carmody had to satisfy the Medical Malpractice Act's presuit requirements.

While several sections of chapter 766 govern these presuit requirements, the provisions most relevant here require that

> the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
> (a)    Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
> (b)    Such negligence resulted in injury to the claimant.
>
> Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a *verified written medical expert opinion from a medical expert* as defined in s. 766.202(6) . . . .

§ 766.203(2), Fla. Stat. (2016) (emphasis added). Section 766.202(6) defines a medical expert as "a person duly and regularly engaged in the practice of his or her profession . . . and who meets

the requirements of an expert witness as set forth in s. 766.102."

§ 766.202(6), Fla. Stat. (2016).

Section 766.102, in turn, provides that "[a] person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records and meets [certain] criteria . . . ." § 766.102(5), Fla. Stat. (2016). These certain criteria depend on the type of health care provider "against whom . . . the testimony is offered." *Id.* § 766.102(5)(a).

If the provider accused of malpractice is a specialist like Dr. Friedman, the corroborating expert must satisfy subsection (5) and:

> 1. Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; and
> 2. Have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:
> a. The active clinical practice of, or consulting with respect to, the same specialty;
> b. Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same specialty; or
> c. A clinical research program that is affiliated with an accredited health professional school or accredited

- 5 -

residency or clinical research program in the same specialty.

§ 766.102(5)(a), Fla. Stat. (2016).

If the provider accused of malpractice is a health care provider other than a specialist or a general practitioner—like Gertsch-Lapcevic, a nurse practitioner—the corroborating expert must satisfy both subsections (5)(c) and (6). Under subsection (5)(c), an expert may testify if he or she has "devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action" to:

> 1. The active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offered;
> 2. The instruction of students in an accredited health professional school or accredited residency program in the same or similar health profession in which the health care provider against whom or on whose behalf the testimony is offered; or
> 3. A clinical research program that is affiliated with an accredited medical school or teaching hospital and that is in the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offered.

§ 766.102(5)(c), Fla. Stat. (2016). And under subsection (6), a physician "may give expert testimony in a medical negligence action with respect to the standard of care of . . . medical support staff,"

including "nurse practitioners," if the physician is licensed, qualifies as an expert under subsection (5), and, "by reason of active clinical practice or instruction of students, has knowledge of the applicable standard of care for . . . nurse practitioners . . . ." § 766.102(6), Fla. Stat. (2016).

To satisfy these requirements, Carmody included within her presuit notices the affidavit of James DeStephens, M.D. In the affidavit, Dr. DeStephens attested that he was a "licensed medical doctor specializing in the practice of Internal Medicine, Hospital Medicine, and Cardiology."

Shands and UF moved to dismiss the complaint on the grounds that Dr. DeStephens did not satisfy subsection (5)(a) concerning a neurosurgeon like Dr. Friedman or subsections (5)(c) and (6) concerning a nurse practitioner like Gertsch-Lapcevic. Carmody provided a supplementary affidavit from Dr. DeStephens—who was also deposed—and the circuit court held hearings on the subject. The upshot of this litigation was that Carmody conceded that Dr. DeStephens did not meet the subsection (5)(a) requirements pertaining to Dr. Friedman—dropping him from the suit—while maintaining that Dr. DeStephens did meet the

subsection (5)(c) and (6) requirements pertaining to Nurse Practitioner Gertsch-Lapcevic.

The circuit court ultimately denied the motion to dismiss, finding that Dr. DeStephens was qualified to render standard-of-care opinions against Nurse Practitioner Gertsch-Lapcevic under both subsections (5)(c) and (6).

Shands and UF filed a certiorari petition, asking the First District to quash the circuit court's order. They asserted that the First District had jurisdiction under article V, section 4(b)(3) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(b)(2)(A). To meet this Court's standard for certiorari relief, Shands and UF argued that the circuit court's order departed from the essential requirements of the law and caused them irreparable harm. *See Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 454 (Fla. 2012) ("The petitioning party must demonstrate that the contested order constitutes '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.' ") (alteration in original) (quoting *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla.

- 8 -

2004)); *see also Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc.*, 104 So. 3d 344, 351 (Fla. 2012) ("[W]hether there is a material injury that cannot be corrected on appeal [is] otherwise termed as irreparable harm."). Carmody did not question the availability of certiorari review, but instead reiterated the points she had successfully made to the circuit court as to Dr. DeStephens's qualifications.

Following oral argument, the First District issued an opinion dismissing the petition for lack of jurisdiction on the basis that Shands and UF had not established irreparable harm. *Carmody*, 331 So. 3d at 237. The First District grounded its decision in *Williams v. Oken*, a case in which we held—on similar facts—that a district court had "exceeded the scope of certiorari review" by weighing the evidence as to whether an expert was qualified under the Medical Malpractice Act instead of merely "ensur[ing] that the procedural aspects of the presuit requirements [were] met." 62 So. 3d 1129, 1137 (Fla. 2011). The First District noted that Carmody "complied with the presuit procedural steps necessary to go forward with her medical negligence claim, including filing a corroborating medical expert opinion under § 766.203(2)," and that the "trial

court complied with the procedural requirements of the law." *Carmody*, 331 So. 3d at 238.

The First District also rejected Shands and UF's argument that the Legislature's 2013 deletions of subsection (14)[5] and portions of subsection (5)(a)[6] fundamentally changed how *Williams* governed certiorari requirements. *See* ch. 2013-108, § 2, Laws of Fla. But the First District did acknowledge that other courts had reasoned to different conclusions, certifying conflict with two post-*Williams* decisions: *Clare* and *Riggenbach*. In these decisions, the district courts granted certiorari relief from trial court rulings on medical malpractice expert qualifications.

Shands and UF unsuccessfully moved for rehearing, rehearing en banc, and certification of a question of great public importance.

---

5. Subsection (14) had stated that "[t]his section does not limit the power of the trial court to disqualify or qualify an expert witness on grounds other than the qualifications in this section." § 766.102(14), Fla. Stat. (2012).

6. The Legislature deleted all references to "similar specialty" from subsection (5)(a), thus shrinking the pool of physicians who could serve as corroborating experts to those within the "same specialty" only. We consider the impact of these amendments in Section III.

- 10 -

They then successfully sought review of the certified conflict in this Court.

**II**

The First District correctly found that Shands and UF failed to satisfy the requirements articulated in *Williams* for certiorari review. But it was not the petitioners' failure to demonstrate irreparable harm that kept them from establishing entitlement to relief; it was their failure to show that the trial court had departed from the essential requirements of the law.

The common law writ of certiorari is an "extraordinary remedy." *Mintz Truppman, P.A. v. Cozen O'Connor, PLC*, 346 So. 3d 577, 579 n.6 (Fla. 2022) (quoting *Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1098-99 (Fla. 1987), *superseded by statute on other grounds*, § 768.72, Fla. Stat. (2021)). It "gives [an] upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists." *M.M. v. Fla. Dep't of Child. & Fams.*, 189 So. 3d 134, 138 (Fla. 2016) (quoting *Broward Cnty. v. G.B.V. Int'l, Ltd.*, 787 So. 2d 838, 842 (Fla. 2001)). Certiorari review is not a substitute for an appeal and "is intended to be available only in very limited circumstances." *Nader v. Fla. Dep't of Highway Safety*

*and Motor Vehicles*, 87 So. 3d 712, 722 (Fla. 2012). Likewise, the scope of certiorari review is more constrained than that of direct appellate review, for "[t]he writ never was intended to redress mere legal error . . . ." *Broward Cnty.*, 787 So. 2d at 842.

Generally, certiorari review is unavailable "to review an order denying a motion to dismiss," and appellate review of such nonfinal orders is limited to "those specified under rule 9.130." *Citizens*, 104 So. 3d at 352. Here, the order denying the motion to dismiss does not fall within any of the classes of orders enumerated in Florida Rule of Appellate Procedure 9.130. As for the availability of certiorari review, Florida courts have created an "exception . . . when the presuit requirements of a medical malpractice statute are at issue" since the "purpose" of the Medical Malpractice Act is "to avoid meritless claims and to encourage settlement for meritorious claims." *Williams*, 62 So. 3d at 1133-34.

As we said in *Williams*, for a district court to "determine whether the circumstances" constitute "one of the rare cases . . . in which certiorari review is appropriate," *id.* at 1134, the district court must answer "yes" to these questions: Has there been "(1) a departure from the essential requirements of the law, (2) resulting

in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal[?]" *Id.* at 1132 (quoting *Reeves*, 889 So. 2d at 822). The last two prongs together are "referred to as irreparable harm." *Nader*, 87 So. 3d at 721. They are also "jurisdictional and must be analyzed before the court may even consider the first [prong]." *Williams*, 62 So. 3d at 1132.

In *Williams*, we did not closely analyze whether the petitioner had satisfied the irreparable harm prongs but rather "concern[ed] ourselves with the first [prong]—whether the trial court departed from the essential requirements of the law." *Id.* at 1132-33. We noted that

> [s]ince it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of clearly established principle of law resulting in a miscarriage of justice.

*Id.* at 1133 (quoting *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 527 (Fla. 1995)). This Court then concluded that certiorari review was unavailable to the petitioner because "[w]hether the trial court erred in finding that [the doctor] was a qualified expert under

- 13 -

the statute is an issue of mere legal error . . . [and] does not amount to a violation of a clearly established principle of law resulting in a miscarriage of justice." *Id.* at 1137.[7]

Like the petitioners in *Williams*, Shands and UF cannot show that the trial court departed from the essential requirements of the law by denying their motion to dismiss. As we explained in *Williams*, "Florida courts have permitted certiorari review solely to ensure that the procedural aspects of the presuit requirements are met." *Id.* At a general level, such procedural aspects include whether a plaintiff—before the filing of the medical malpractice lawsuit—gave the defendant "advance notice" and provided an "opportunity [for the defendant] to examine [the] claim." *Id.* at 1136. Thus, a district court can grant certiorari review to verify that the plaintiff submitted the corroborating affidavit of an expert

---

7. Although we found that there had not been a "departure from the essential requirements of the law"—which is a determination on the merits—we concluded that the district court should have "dismissed" the petition for certiorari. *Williams*, 62 So. 3d at 1137. That language, however, we generally use when disposing of a matter prior to reaching its merits. *See State Farm Fla. Ins. Co. v. Seville Place Condo. Ass'n, Inc.*, 74 So. 3d 105, 109-10 (Fla. 3d DCA 2011) (Shepherd, J., concurring) (discussing this distinction in a similar context).

witness.  *Id.* at 1137.  But here there is no disputing that Carmody checked that box.  *See Carmody*, 331 So. 3d at 238 ("Respondent complied with the presuit procedural steps necessary to go forward with her medical negligence claim, including filing a corroborating medical expert opinion . . . .").

Instead, Shands and UF seek certiorari review of the circuit court's determination that Dr. DeStephens is a qualified expert. *See id.* at 237 ("Petitioners assert that the trial court should have dismissed Carmody's medical malpractice lawsuit because her medical doctor expert was unqualified to address the standard of care applicable to the certified nurse practitioner who rendered care . . . .").  But this, we have said, the district courts cannot do.  *See Williams*, 62 So. 3d at 1137 ("[W]e conclude that the First District exceeded the scope of certiorari review when it granted the petition to determine whether [the doctor] was a qualified expert.").

**III**

Shands and UF argue that the 2013 amendments to the Medical Malpractice Act fundamentally changed the applicability of

- 15 -

*Williams.*[8] They contend that the 2013 amendments erased whatever discretion trial courts had in making presuit expert qualification determinations, meaning that all such determinations are now so mechanical as to be "procedural" and thus subject to certiorari review. *See* ch. 2013-108, § 2, Laws of Fla.

We do not agree. The amendments limited—but did not erase—trial court discretion in assessing the qualifications of proposed expert witnesses. By deleting subsection (14)—which had provided that nothing in section 766.102 "limit[ed] the power of the trial court to disqualify or qualify an expert witness on grounds other than the qualifications in this section"—the Legislature eliminated an explicit and substantial basis for trial court discretion. And by simultaneously amending subsection (5)(a)[9]

---

8. Likewise, the Second and Fifth District Courts of Appeal cited the 2013 amendments when deciding the conflict cases. *See Clare,* 220 So. 3d at 1261 ("The trial court's ruling in this case, which effectively resurrects the prior statutory language . . . constitutes a clear departure from the essential requirements of the law . . . ."); *Riggenbach,* 267 So. 3d at 554 n.1 (discussing the "effect of the [2013] amendment[s]").

9. Section 766.102(5)(a) is no longer at issue in this case because Carmody dropped Dr. Friedman—a specialist—from the suit.

such that any corroborating expert who is to testify against a specialist must specialize in the "same"—as opposed to "same or similar"—specialty, the Legislature eliminated language that implicitly empowered the courts to exercise discretion in a significant subset of medical malpractice actions.

Yet section 766.102 still calls on the trial courts to make some discretionary decisions. For example, under subsection (5)(c)—which applies here—the trial court must determine whether an expert who is to testify against neither a specialist nor a generalist has "devoted professional time" to (1) "[t]he active clinical practice of, or consulting with respect to, the *same or similar health profession*" as the defendant; (2) "[t]he instruction of students . . . in the *same or similar health profession*" as the defendant; or (3) "[a] clinical research program . . . in the *same or similar health profession*" as the defendant. § 766.102(5)(c)1.-3., Fla. Stat. (emphasis added). A trial court cannot make a "same or similar health profession" determination without considering evidence and using its discretion. And even under amended subsection (5)(a), there are and will continue to be borderline cases where trial courts

- 17 -

must weigh evidence in determining if an expert is a practitioner within the "same specialty"[10] as the defendant.[11]

Because trial courts must continue to exercise discretion in making some of these presuit qualification determinations, not all of their findings qualify as "process-related deficienc[ies]" subject to certiorari review. *See Carmody*, 331 So. 3d at 238. Instead, some of these findings are "sufficiency of the evidence" determinations, and "granting a petition for writ of certiorari to review" them remains "inappropriate." *Williams*, 62 So. 3d at 1136.

## IV

While the burden of defending against litigation under ordinary circumstances does not constitute irreparable harm, in

---

10. Neither "specialty" nor "same specialty" is defined in chapter 766.

11. In its amicus brief, the Florida Justice Association identifies several such cases, including *Patides v. Johns Hopkins All Children's Hospital, Inc.*, No. 19-008484-CI (Fla. 6th Cir. Ct.) (involving whether an expert certified in the specialty of pediatrics and the subspecialty of pediatric cardiology satisfies the "same specialty" requirement vis-à-vis a defendant certified in the subspecialties of pediatric neonatology and pediatric interventional cardiology), and *Dontineni v. Sanderson*, 346 So. 3d 169, 170-71 (Fla. 5th DCA 2022) (involving whether an expert certified in internal medicine can testify under subsection (5)(a) against a defendant certified in internal medicine and as a hospitalist).

enacting the presuit requirements of the Medical Malpractice Act, the Legislature elected to treat differently the burden of defending against meritless medical negligence claims. *See* § 766.201(2), Fla. Stat. ("It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims."). Before and after the 2013 amendments, the Medical Malpractice Act's presuit requirements have served a jurisdictional purpose, for "*no action shall be filed* . . . unless the attorney filing the action has made a reasonable investigation . . . to determine that there are grounds for a good faith belief that there has been negligence . . . ." § 766.104(1), Fla. Stat. (emphasis added). And when an action has been filed but the plaintiff has failed to comply with the presuit requirements, the Legislature demands that "the court *shall dismiss* the claim." § 766.206(2), Fla. Stat. (emphasis added). Subject to all other federal and state constitutional requirements, the Legislature may generally limit what tort claims can be brought at state law, and how they are brought, as long as it does not run afoul of article 1, section 21 of Florida's Constitution ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."). *See Sebring Airport*

*Auth. v. McIntyre*, 783 So. 2d 238, 244-45 (Fla. 2001) ("Where a statute does not violate the federal or state Constitution, the legislative will is supreme . . . .") (quoting *City of Jacksonville v. Bowden*, 64 So. 769, 772 (Fla. 1914)). Carmody does not argue that the Legislature has exceeded its constitutional authority.

And it is within our constitutional authority to ensure that Florida's procedural rules of court manifest the substantive legal enactments of the Legislature. *See State v. Gaines*, 770 So. 2d 1221, 1225 (Fla. 2000) ("[T]his Court alone has the power to define the scope of interlocutory appeals . . . ."); *see also Osceola Cnty. v. Best Diversified, Inc.*, 830 So. 2d 139, 140-41 (Fla. 5th DCA 2002) ("[T]he Florida Constitution does not authorize the Legislature to provide for interlocutory appeals. . . . [O]nly if the Florida Supreme Court incorporates the statutory language into the appellate rules can appellate jurisdiction be broadened."). We cannot say that, in its current form, Florida Rule of Appellate Procedure 9.130 adequately identifies all nonfinal orders appropriate for interlocutory review. Therefore today, on our own motion, we have also amended Florida Rule of Appellate Procedure 9.130(a)(3) to provide for interlocutory review of nonfinal orders that deny a

motion to dismiss on the basis of the qualifications of a corroborating witness under section 766.102(5)-(9), Florida Statutes.[12]

**V**

Because the circuit court's allegedly erroneous determination that Dr. DeStephens satisfied the Medical Malpractice Act's presuit requirements does not constitute an "essential departure from the law," certiorari relief is unavailable. We therefore approve the First District's decision below to the extent that it is consistent with our decision here, and we disapprove the Second and Fifth Districts' decisions in *Clare* and *Riggenbach*, respectively.

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result and dissents in part with an opinion.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

---

12. The specific amendment is reflected in the appendix to *In re Amendment to Florida Rule of Appellate Procedure 9.130*, No. SC2023-0701 (Fla. July 6, 2023).

LABARGA, J., concurring in result and dissenting in part.

I agree with the majority's conclusion that "the circuit court's allegedly erroneous determination that Dr. DeStephens satisfied the Medical Malpractice Act's presuit requirements does not constitute an 'essential departure from the law.' " Majority op. at 21. Thus, I concur in the result to that extent.

However, the majority opinion further explains that in deciding this case, the majority determined it appropriate to unilaterally "amend[] Florida Rule of Appellate Procedure 9.130(a)(3) to provide for interlocutory review of nonfinal orders [in medical malpractice cases] that deny a motion to dismiss on the basis of the qualifications of a corroborating witness." *Id.* at 20-21.

This unilateral amendment via separate opinion, *see In re Amendment to Florida Rule of Appellate Procedure 9.130*, No. SC2023-0701 (Fla. July 6, 2023), will permit interlocutory review of such nonfinal orders in the future. I believe that an amendment of this significance should receive the appropriate rules committee referral and consideration *beforehand.* Consequently, I dissent to this portion of the majority's analysis, consistent with my

- 22 -

dissenting opinion in the separate opinion amending rule 9.130(a)(3).

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

First District – Case No. 1D21-634

(Alachua County)

Christine R. Davis of Davis Appeals, PLLC, Tallahassee, Florida,

for Petitioners

Kennan G. Dandar and Timothy M. Dandar of Dandar & Dandar, P.A., St. Petersburg, Florida; and Adam Richardson of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Respondent

Andrew S. Bolin of Bolin Law Group, Tampa, Florida,

for Amici Curiae Florida Hospital Association, Florida Medical Association, and the Litigation Center of the American Medical Association

Kansas R. Gooden of Boyd & Jenerette, PA, Miami, Florida; and Jessica N. Cochran of Bush, Graziano, Rice & Platter, P.A., Tampa, Florida,

for Amicus Curiae Florida Defense Lawyers Association

Bryan S. Gowdy and Dimitrios A. Peteves of Creed & Gowdy, P.A., Jacksonville, Florida,

for Amicus Curiae the Florida Justice Association